BUILDERS SUPPLY, Incorporated,
Appellant,

v.

W. W. ANDERSON, Appellee.

No. 12863.

Court of Civil Appeals of Texas.

San Antonio.

July 6, 1955.

Rehearing Denied Sept. 7, 1955.

Ewers, Cox & Toothaker, Chas. Elick, William E. York, McAllen, for appellant.

Kelley, Looney, McLean & Littleton, Willard E. Dollahon, Edinburg, for appellee.

·POPE, Justice.

W. W. Anderson, plaintiff, recovered judgment against Builders Supply, Incorporated, in the amount of $7,086.45, by reason of certain defective materials furnished in the construction of the roof of a three-room addition to plaintiff's home. The jury, in response to special issues, found that defendant, who supplied the materials, expressly warranted to the plaintiff that the materials were suitable for the construction of such roofs, that the plaintiff relied upon the warranty, that the materials were used in accordance with defendant's published requirements for such roofs, that the plaintiff used the materials in reliance upon defendant's skill and knowledge that they were reasonably suitable for such roofing purposes, that the materials were defective and caused the defective condition of the roof. The jury found, with reference to damages, that the replacement cost would be $5,966.45, and that the loss of the use and enjoyment of the construction for a period of thirty-two months caused an additional damage of $1,120. Appellant insists that the trial court erred in overruling its motion for judgment notwithstanding the verdict, because the jury answers have no support in the evidence, and that the replacement cost of the roof was the wrong measure of damages in the absence of proof that the roof was dangerous and valueless.

Appellant's attack upon all the findings, other than the damage issues, is that there was no evidence to support them. The record, however, supports the findings. Without endeavoring to restate all of the evidence, a sufficient summary discloses that in 1948 Anderson conveyed a lot to a contractor with a verbal agreement that the contractor at some later date would make certain additions to Anderson's house, but that Anderson would pay for all the materials. In 1950, Anderson employed an architect to make drawings for the additions to his home. He visited the contractor, who was working on another job, and saw, for the first time, a system of roofing known as the "F & A Roof." It was a prefabricated system and the defendant supplied the

necessary beams, blocks and aggregate. The system required installation and construction in accord with certain stated plans and specifications. While Anderson was visiting the contractor, defendant's salesman explained the "F & A" system to him, represented its good qualities, and so interested Anderson in the system that he changed his former plan to use conventional roofing. Defendant's salesman went over the same matters with Anderson's architect and, from the information furnished, the architect re-drew the plans. Neither Anderson nor his architect had any prior knowledge or experience with the new system. The salesman testified that he wrote up the order for Anderson. The contractor testified his agreement was that Anderson should pay for all materials, and both Anderson and the contractor at different times ordered the materials to be delivered to the job. Anderson and not the contractor paid for the materials.

There is evidence which the jury could believe, that showed the construction was in accord with the required plans and specifications. Anderson testified that the president and general manager for the defendant stated to him, after a thorough inspection of the roof which had proved faulty: "We can't find anything wrong with the construction of the roof." He also stated that "the trouble seemed to lie directly in the roof." There was proof that the defendant's president made the same statements to a disinterested third person. The contractor and roofing man who installed the roof, testified that they conformed to the required plans.

The proof showed that the materials were defective. The evidence was that the roof, though correctly installed, began to lift, crack in the corners, sag and sway in the middle. Though once level, the roof commenced to hold puddles of water which were two inches deep in places. At times the roof cracked and popped like the report of a pistol and this occurred as often as ten times an hour. Changes in temperature and season affected these noises. At night the noises wakened the plaintiff and his wife.

These conditions were getting worse. The plaintiff's family fear to occupy that part of the home. Defendant inspected the roof, had experts and engineers inspect it, and the contractor inspected it. None were able to report the cause of the defects, but none attributed the defects to the manner in which the construction was done. The issues are supported by the evidence.

█ Plaintiff proved that the reasonable cost of tearing off the roof and replacing it was $5,966.45. The defendant introduced evidence which would show that such cost would be only $4,000, but the jury accepted the plaintiff's evidence. The plaintiff's proof of damages was made with no objection that it was grounded on any wrong measure of damages, and the defendant defended by like proof. In our opinion the case was tried on the theory that repair and replacement cost was the correct measure of damages, and in any event, under the circumstances of this case, it was a correct measure of damages. By motion for judgment non obstante the defendant urged that the repair and replacement measure of damages was incorrect in the absence of proof that the roof was hazardous and hence valueless. However, plaintiff's expert testified that the steel supports for the roof, after bending to a certain point, will change their molecular structure, and in time will crystallize, fail and snap. We are pointed to no place in the record, and we find nothing, that contradicts this evidence, but appellant attacks it arguendo only.

Independent Shope Brick Co. v. Dugger, Tex.Civ.App., 281 S.W. 600, 602, affirmed, Com.App., 285 S.W. 599, is helpful. The opinion of the Court of Civil Appeals states, "The purpose in every case is to compensate the complaining party for the injury suffered, and the measure of damages which will best accomplish this purpose should be adopted. What means will best accomplish such purpose in a given case depends on the facts and circumstances in evidence therein." The case then proceeds to explain that one rule of damages is applicable when the defects materially damage the whole structure and a different rule, as here, is appli-

cable when the repairs or replacements can be made without destroying the whole structure. This same principle is approved in Atkinson v. Jackson Bros., Tex.Civ.App., 259 S.W. 280, affirmed, Com.App., 270 S.W. 848, 38 A.L.R. 1377; Super-Cold Southwest Co. v. Green & Romans, Tex.Civ.App., 196 S.W.2d 340; Plaster v. Roper, Tex.Civ. App., 152 S.W.2d 927; Wilson & Son Lumber Co. v. Huggins, Tex.Civ.App., 3 S.W.2d 599; Roberts v. Roberts, Tex.Civ. App., 27 S.W.2d 880; Totten v. Houghton, Tex.Civ.App., 2 S.W.2d 530; McBurnett v. Smith & McCallin, Tex.Civ.App., 286 S.W. 599; Restatement, Contracts, § 346, 1a;[1] 77 C.J.S., Sales, § 378; 55 C.J. 859, n. 62–68.

We have examined the other points and find them without merit. The judgment is affirmed.

[1] "A contracts to construct a schoolhouse for B for $50,000. When completed, the foundations sink and the building is dangerous. B has paid A $30,000. At a cost of $40,000 more, B tears down the walls, strengthens the foundations, and rebuilds the superstructure, this being necessary to make the building safe. B can get judgment for $20,000, this amount being the cost of tearing down and rebuilding, less the part of the contract price not yet paid." Restatement, Contracts, § 346, Illustration 5, Subsection (1).