**FIDELITY AND DEPOSIT COMPANY OF MARYLAND; Jess Mayfield; J. L. Mayfield, Co., Inc.; et al., Appellants,**

v.

**Newsom STOOL, M. D., Appellee.**

**No. 1351.**

Court of Civil Appeals of Texas, Tyler.

Sept. 25, 1980.

Rehearing Denied Oct. 23, 1980.

Theo. F. Weiss, Joe Meador, San Antonio, for appellants.

James E. Aderhold, Seagal V. Wheatley, Oppenheimer, Rosenberg, Kelleher & Wheatley, Mary Elizabeth Carmody, San Antonio, for appellee.

McKAY, Justice.

On September 29, 1972, Dr. Newsom Stool entered into a standard AIA Construction Contract with Jess and Jack Mayfield d/b/a Mayfield Construction Company (hereinafter Mayfield) for the construction of a residence in San Antonio, Texas. The final contract price for the project was $120,335.00 with a time for completion of 200 days. Fidelity & Deposit Company of Maryland (hereafter F & D) issued payment and performance bonds on the project.

Dr. Stool financed the residence through the San Antonio Savings Association (hereinafter SASA) which agreed to lend Dr. Stool $90,000 toward cost of building a home at an interest rate of 7½%. SASA agreed that it would hold the 7½% interest commitment open until August, 1973. Because of the interest commitment deadline and interim financing costs, Dr. Stool and Mayfield added a provision to the construction contract that if Mayfield completed the residence in less than 200 days, Dr. Stool would pay Mayfield a bonus of $50.00 per day for every day prior to the 200 day period in which the residence was to be completed, but if Mayfield completed the residence in more than 200 days, $50.00 per day would be deducted from the contract price for a period not to exceed 60 days. In August, 1973, when the loan commitment was about to expire, the residence was approximately 75% complete but SASA extended the loan commitment to September 1, 1973. However, on September 1, 1973, the residence was still incomplete, and the interest rate was raised to 8%. On November 29, 1973, the loan was closed.

During September, 1973, it became apparent that Dr. Stool was dissatisfied with the quality of the work, and during that month, an extensive punch list was compiled of various items of work that had yet to be completed or were unsatisfactorily completed. From about December 26, 1973,

Dr. Stool occupied the residence, and during January, 1974, the majority of the items of work on the list was completed; however, Dr. Stool was still dissatisfied with the condition of the residence and refused to tender the balance due under the contract. On September 30, 1974, Mayfield instituted an action to recover the balance due under the contract in the amount of approximately $4,000.00. Dr. Stool filed a counterclaim against Mayfield and F & D alleging that the contract had not been substantially performed, that the construction of the residence was not done in a good and workmanlike manner, that the delay in completion of the residence caused him to pay a greater rate of interest, and that he should recover damages in the sum of $60,000.00 which was the reasonable and necessary cost of repairing the defective work.

During the period of late 1974 through March of 1978, both parties engaged in negotiations concerning the reasonable and necessary repairs to Dr. Stool's home. In March, 1978, Mayfield finally refused to perform any work on the residence, and on May 22, 1978, Dr. Stool entered into a contract with S & H Remodeling Company of San Antonio. In that contract S & H Remodeling agreed to remedy the defects in the residence for the sum of $57,660.04. At the time of trial, all of the work had not yet been completed.

On January 9, 1979, trial was had before a jury, and judgment was rendered against Mayfield for the reasonable and necessary cost to correct the defects in the residence and for damages resulting from Mayfield's failure to complete the residence by the contract date. Additionally, judgment was rendered in favor of F & D against Mayfield for indemnity of any and all amounts which F & D would be required to pay to Stool as a result of the judgment. Both Mayfield and F & D filed motions for judgment non obstante veredicto and for a new trial, all of which were denied. Appellants have duly perfected this appeal.

The determinative issue in this appeal concerns the proper measure of damages for the breach of a construction contract.

In twenty–one points of error appellants complain of the measure of damages submitted to the jury by the trial court.

In response to special issues the jury found that:

1. The contract of September 29, 1972, to construct the Newsom Stool home was not substantially performed by Mayfield Construction Company.[1]

2. The Mayfield Construction Company failed to construct Newsom Stool's family home in a good and workmanlike manner pursuant to the contract of September 29, 1972.

3. Mayfield Construction Company failed to correct the defects caused by its failure to construct the family home for Newsom Stool in a good and workmanlike manner.

4. The reasonable and necessary cost to correct the defects in the construction of Newsom Stool's family home in March, 1978, was $35,381.80.

5. Newsom Stool suffered damages in the amount of $3,794.96 for increased interest expense as a result of the Mayfield Construction Company's failure to complete the family home by June 28, 1973.

6, 7 & 8. Appellant Fidelity & Deposit Company of Maryland should not be awarded its attorney's fees for litigation in the trial court or appeal to the court of civil appeals or appeal to the Supreme Court of Texas.

Appellants contend that under the record the correct measure of damages was the difference in value of the building as constructed and its value had it been constructed according to the contract.

Restatement of Contracts, § 346 (1932), states that where the contractor breaches the contract because of defective or unfinished construction, the owner may recover:

"(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or

(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance · with the contract would involve unreasonable economic waste." § 346 at 573.

Texas courts have long held that where defects in construction of a building may be remedied, the measure of damages for the owner is the cost of such remedy or repair, but where such defects cannot be remedied without injury to the structural efficiency of the building as a whole, the measure of damages is the difference between the value of the building as constructed and its value had it been constructed according to the contract. *Atkinson v. Jackson Bros.*, 259 S.W. 280, 284 (Tex.Civ.App.–Austin 1924), 270 S.W. 848, 850 (Tex.Comm'n App. 1925, holding approved); *McBurnett v. Smith & McCallin*, 286 S.W. 599, 601 (Tex. Civ.App.–Austin 1926, no writ); *Totten v. Houghton*, 2 S.W.2d 530, 534 (Tex.Civ.App.– Eastland 1927, no writ); *Tucker v. Northcutt*, 248 S.W.2d 750, 751 (Tex.Civ.App.– Waco 1952, no writ); *Builders Supply, Inc. v. Anderson*, 281 S.W.2d 649, 650–1 (Tex. Civ.App.–San Antonio 1955, writ ref'd n. r. e.). Usually, a finding of substantial per-

---

1. As a part of issue 1 the following instruction was given:

"You are instructed that to constitute 'substantial performance' the contractor must have in good faith intended to comply with the contract, and shall have substantially done so in the sense that the defects are not pervasive, do not constitute a deviation from the general plan contemplated for the work, and are not so essential that the object of the parties in making the contract and its purpose cannot, without difficulty, be accomplished by remedying them. Such performance permits only such omissions or deviations from the contract as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstructing." (*Atkinson v. Jackson Bros.*, Tex.Com'n App., 270 S.W. 848)

formance of the contract results in the measure of damages being the cost of remedy or repair. *Atkinson v. Jackson Bros.,* supra; *Cooper Concrete Co. v. Hendricks,* 386 S.W.2d 221, 223 (Tex.Civ.App.–Dallas 1965, no writ).

Both appellants and appellee rely upon the case of *Hutson v. Chambless,* 157 Tex. 193, 300 S.W.2d 943, 945 (1957). The court in *Hutson* stated:

"Where it is necessary, in order to make the building comply with the contract, that the structure, in whole or in material part, must be changed, or there will be damage to parts of the building, or the expense of such repair will be great, then it cannot be said that there has been a substantial performance of the contract. Generally, where there has not been such substantial performance, the measure of the owner's damage is the difference between the value of the building as constructed and its value had it been constructed in accordance with the contract. Such a recovery would be just to both parties. It is manifest that to measure the owner's damage by the cost necessary to make the building conform to the contract would often be an injustice, because in many instances such cost would amount to almost as much as the original contract price."

In a concurring opinion in *Hutson,* Judge Norvell wrote at page 946:

"I concur in the decision reached in this particular case as it seems that assuming the contract has not been substantially performed, the recovery permitted under the facts pleaded by Chambless would be measured by the difference between the value of the building as actually constructed and its value had it been constructed in accordance with the plans and specifications of the contract. *This rule, however, if it can be properly called a general rule, is subject to numerous exceptions. This difference in values is not necessarily the measure of damages when the default of the contractor is wilful or intentional.* * * * Nor should it be the exclusive measure where it is shown that the owner of property desiring construction thereon is dependent upon a loan commitment which is based upon completion of the work in accordance with plans and specifications, nor where an essential element of the contract from the owner's standpoint is the 'gratification of his taste' for which he has contracted and agreed to pay money * * *." (Emphasis added)

█ Thus the rule in Texas seems to be that where the correction of defects and deviations would impair the structure as a whole, or require a great expense, the correct measure of damages is the difference in the value of the structure as constructed and its value had it been constructed according to the contract. *Hutson v. Chambless,* supra. Where the correction of defects and deviations would not impair the structure as a whole, or require great expense or unreasonable economic waste, the damages would be the remedial cost. *Greene v. Bearden Enterprises, Inc.,* 598 S.W.2d 649, 652 (Tex.Civ.App.–Fort Worth 1980, no writ); *Rogowicz v. Taylor and Gray,* 498 S.W.2d 352, 354 (Tex.Civ.App.–Tyler 1973, writ ref'd n. r. e.); *Jacobini v. Zimmerman,* 487 S.W.2d 249, 251 (Tex.Civ.App.–Fort Worth 1972, no writ); See generally 10 Tex.Jur.2d Building Contracts § 57 at p. 65.

It is noted that in *Cooper Concrete Co. v. Hendricks,* supra, and *Tucker v. Northcutt,* supra, the statement of the general rule that "the correct measure of damages resulting from the breach of a building contract is ordinarily the reasonable cost of remedying the defects" includes "provided such contract has been 'substantially performed.'"

█ The facts and circumstances in each case will determine whether the remedial cost or the difference in value is the proper measure of damages. *Greene v. Bearden Enterprises,* supra.

The jury found that the construction contract was not substantially performed by Mayfield. The voluminous record contains evidence of numerous defects and deviations by Mayfield from the provisions of the contract, and how such could be and were

corrected. However, there was no issue submitted to the jury as to whether the correction of defects and deviations would impair the structure as a whole, nor was there any issue as to whether such correction of defects would result in excessive cost or unreasonable economic waste. There was no request for the submission of these issues, and there was no objection because they were not given. Since the court submitted the case on the cost of correcting the defects and the jury made an answer thereto, we must presume on appeal that the court found by implication that the correction of the defects would not impair the structure as a whole nor result in unreasonable economic waste or excessive cost. *Tucker v. Northcutt*, supra. It should be pointed out that appellee's counterclaim pled for "the reasonable and necessary cost of repair," while Mayfield pled that he substantially performed the contract. Appellee also alleged that there were portions of the contract which were not performed and some portions where the work was negligently performed.

Rule 279, Tex.R.Civ.P. provides that where a ground of recovery consists of more than one issue, and one issue is answered by the jury and another is omitted without request or objection, such omitted issue, if supported by the evidence, shall be deemed as found by the court in such manner as to support the judgment. *Houston General Ins. Co. v. Lane Wood Industries, Inc.*, 571 S.W.2d 384, 389 (Tex.Civ.App.–Fort Worth 1978, no writ); *Fawcett v. Bellah*, 556 S.W.2d 598, 602 (Tex.Civ.App.–Corpus Christi 1977, no writ); *Yorfino v. Ferguson*, 552 S.W.2d 563, 564 (Tex.Civ.App.–El Paso 1977, no writ); *Barcheers v. Braswell*, 548 S.W.2d 76, 78 (Tex.Civ.App.–El Paso 1977, no writ).

No cases have been cited to us, nor have we found one, for the proposition that a finding by the jury that a contractor has not substantially performed under a building contract necessarily causes the measure of damages to be the difference in the values. Appellee argues that when the jury found that Mayfield did not substantially perform the contract, there was an implied finding, by virtue of the definition given under issue 1, that Mayfield did not in good faith intend to comply with the contract in that the defects resulted from intentional deviation from the contract; accordingly, appellee contends that the measure of damages for intentional deviation is the cost of correction or repair. Appellants maintain that the difference in values is the correct measure since the jury found no substantial performance.

In 76 A.L.R.2d p. 805, 823, it is said: "Those courts which speak in terms of 'substantial performance' in discussing the measure of damages for a builder's breach of a construction contract usually indicate that 'substantial performance' includes the element of the builder's good faith; in other words, they recognize that there can be no 'substantial performance,' in the connotation under consideration, if the builder did not act in good faith and without wilful or intentional wrong."

In 13 Am.Jur.2d Building and Construction Contracts, § 42, p. 46 is found this language:

"It is generally held, however, that a contractor who wilfully departs from the terms and specifications of the contract, in material or work, may recover the contract price less the cost of making the work comply with the contract requirements, as distinguished from recovery between the difference in value of the work as constructed and as it should have been constructed."

It should be noted that even in the *Hutson* opinion, the majority alludes to a possible exception to the value rule if there is an intentional deviation from the contract. *Hutson v. Chambless*, supra at 945.

An examination of the record reveals that appellant Mayfield intentionally deviated from the requirements of the construction contract in the following particulars:

1. The specifications of the contract required the skylights to be raised some three inches above the level of the roof. Appellant admitted that the skylights were installed on the roof

surface which resulted in leakage. Additionally, the skylights installed on the home were not the kind specified by the plans and specifications.

2. The contract required cant strips to be installed in the roof to prevent leakage. Appellant admitted that he failed to install approximately 225 lineal feet of cant stripping which caused the roof to leak.

3. The contract required a special design feature involving a wall formed by the intersection of two planes of mitered glass. After the house was framed it became apparent that Mayfield had installed two or three big posts in the corner where the glass wall was designed. The architect examined the work and found that the posts were not in the plans and that this architectural detail had been ruined.

4. The time for performance of the contract was 200 days, and the contract further provided that all time limits were of the essence. Mayfield's payroll record reflects that the construction hours allocated to the Stool residence continually decreased in proportion to the work he undertook on other projects during the time of construction of the Stool residence. The project was completed approximately eight months late.

5. The plans and specifications provided that expansion joints be applied to the exterior of the home to prevent the stucco from cracking. Mayfield failed to install a majority of the expansion joints but rather placed marks on the surface of the stucco to make it appear as if a joint had been installed. The failure to install the joints resulted in cracking of the stucco.

6. The air–conditioning units installed by Mayfield were not installed in conformance with the plans and specifications. Approximately eight register vents were not installed in the proper locations. Furthermore, in four rooms of the Stool residence ceiling "diffusers" were installed in lieu of wall registers.

7. The bid submitted by Mayfield for the construction of the Stool residence included the cost of a subcontract on the entire roofing work. Mayfield subcontracted the roofing contract to C & M Roofing Company. To save money, however, Mayfield installed flashing and cant strips which did not conform to the contract specifications and caused the roof to leak. When Mayfield was informed by the Stools that the roof leaked, Mayfield did not ask the subcontractor to repair the roof but instead hired a third party. As a result, C & M Roofing Company's ten–year warranty to Stool was voided.

██ In view of the aforementioned evidence, we conclude that the trial court impliedly found that Mayfield intentionally deviated from the plans and specifications of the contract and therefore did not err in submitting the cost of repair measure of damage to the jury.

Furthermore, an additional ground exists which supports our conclusion that the proper measure of damages in the case is the cost of repair. Article 25 of the construction contract provides in relevant part:

If the contractor defaults or neglects to carry out the work in accordance with the contract documents or fails to perform any provision of the contract, the Owner may . . . make good such deficiencies and may deduct the cost thereof from the payment then or thereafter due the contractor or, at his option, may terminate the contract . . . and may finish the work by whatever method he may deem expedient, and if the unpaid balance of the contract sum exceeds the expense of finishing the work, such shall be paid to the contractor, but if such expense *exceeds such unpaid balance, the contractor shall pay the difference to the owner.* (Emphasis added)

██ From an examination of Article 25 it is our view that the parties contracted for

a cost of repair measure of damages in the event the contractor defaulted or failed to conform to the plans and specifications of the construction contract. Texas courts have consistently allowed parties to a construction contract to agree to use this particular measure of damages for the contractor's failure to comply with the plans. *Volkman v. Eakman*, 496 S.W.2d 752, 757–58 (Tex.Civ.App.–Fort Worth, 1973, writ ref'd n. r. e.); *Tucker v. Northcutt, supra; Harrop v. National Loan and Investment Co.*, 204 S.W. 878 (Tex.Civ.App.–Fort Worth 1918, writ ref'd). Consequently, appellants cannot complain that the trial court improperly applied the measure of damages for which they agreed in a duly executed contract. Where a contract is clear, unambiguous and incisive, it must stand as written and be enforced accordingly. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951); *George v. El Paso County Water Control & Improvement District No. 1*, 332 S.W.2d 144, 148 (Tex.Civ. App.–El Paso 1960, writ ref'd n. r. e.). Moreover, it is well established that parties having agreed upon the measure of damages for breach of their contract are accordingly bound. *Buhler v. McIntire*, 365 S.W.2d 237, 239–40 (Tex.Civ.App.–Austin 1963, writ ref'd n. r. e.); *Tucker v. Northcutt, supra*. We hold the trial court properly applied the cost of repair measure of damages, and all of appellants' points which relate to this issue are overruled.

■ Parenthetically, appellants have assigned error because the trial court refused to admit evidence as to the reasonable market value of the residence at the time of trial. Since we have held that the proper measure of damages in this case is the cost of repair, it is our view that the trial court properly excluded such evidence. These points are overruled.

Appellants assign numerous points of error complaining that the trial court erred in submitting special issue No. 4 which inquired as to the necessary and reasonable cost of correcting the defects as of March,

1978. Appellants argue that Stool's cause of action against Mayfield was for breach of contract which occurred in 1973 and 1974 and therefore, the damages should have been measured as of the date of the breach. We disagree with these contentions.

The record reflects that the completion date of the contract was April 28, 1973, but the Stools did not occupy the residence until on or about December 26, 1973, which was the approximate date the Stools moved into the residence. During the fall of 1973 several architectural punch lists were compiled of items to be completed. Mayfield completed most of the items on the lists, but the parties agreed that when the remaining items were completed, the Stools would issue the unpaid balance on the contract of approximately $4,200.00. Mayfield did not correct the defects and deviations, however, and the parties negotiated for a period of almost five years for repairs to the residence. In the spring of 1978, Mayfield met with the Veterans Administration inspectors at the Stool residence to examine the defects. At that time Mayfield was asked both orally and in writing to fulfill the contract by correcting the defects set forth on the inspectors' list. In March, 1978, Mayfield refused to correct the defects and deviations in the Stool residence.

■■ It is our view that the construction contract between Stool and Mayfield was breached in March, 1978. It is well–established that a breach of a contract occurs when a party fails or refuses to perform an act or thing that he has expressly or impliedly promised to do. *Crutcher–Rolfs–Cummings v. Ballard*, 540 S.W.2d 380, 386 (Tex.Civ.App.–Corpus Christi 1976, writ ref'd n.r.e.); *Provident Savings Life Assurance Society of New York v. Ellinger*, 164 S.W. 1024, 1026 (Tex.Civ.App.–Austin 1913, writ ref'd). When Mayfield declared that he would not perform the full contract by refusing to correct the defects and deviations as set forth on the punch lists in March, 1978, the breach occurred on that date.[2] Therefore, it follows that the trial

2. The record shows that the parties entered into an agreement that Mayfield would receive

the remaining balance on the contract when he satisfactorily completed the items on the punch

court properly submitted March, 1978, as the date on which the cost of repairs should be measured. See 22 Am.Jur. 2d Damages § 52 at 81 (1965).

Appellants further argue that Stool failed to mitigate his damages because he knew that construction costs were rising, and he was financially able to correct the defects at any time. Therefore, since Stool waited until fall of 1978 to recontract for the repairs to the residence, appellants' damages were increased, and thus the doctrine of avoidable consequences precludes recovery by Stool. This contention has no merit and is overruled.

In Texas it is recognized that the rule of avoidable consequences imposes a duty on the person injured to minimize his damages by the exercise of ordinary care. *LTV Aerospace Corp. v. Bateman*, 492 S.W.2d 703, 708 (Tex.Civ.App.–Tyler 1973, writ ref'd n.r.e.); *Reavis v. Taylor*, 162 S.W.2d 1030, 1035 (Tex.Civ.App.–Eastland 1942, writ ref'd w.o.m.); See generally 17 Tex.Jur. 2d Damages § 38 (1960). In a breach of contract action the doctrine requires the injured party to use reasonable diligence to minimize his damages, but does not require him to imperil his cause of action or to sacrifice a substantial right of his own. *LTV Aerospace v. Bateman*, supra, at 709; *Guaranty Abstract Co. v. Denman*, 209 S.W.2d 213, 215, (Tex.Civ.App.–Texarkana 1948, no writ). Furthermore, the party charged with breach of contract has the burden of establishing that the injured party could have minimized and mitigated his damages but failed to do so. *Brown Supply Co. v. Rushing*, 361 S.W.2d 728, 730 (Tex.Civ.App.–Amarillo 1962, no writ); *Tortuguero Logging Operation, Ltd. v. Houston*, 349 S.W.2d 315, 318 (Tex.Civ. App.–San Antonio 1961, writ ref'd n.r.e.). After a careful examination of the record it is our view that the appellants have offered no evidence to show appellees have failed to mitigate their damages. The record clearly

shows that Stool relied upon the representations and assurances of Mayfield that a compromise could be negotiated concerning the items on the punch list. These negotiations lasted almost five years, and Stool did not seek to obtain another contractor to correct the defects until after March, 1978, when Mayfield finally refused to correct the defects. The rule is well stated by Professor Corbin as follows:

"It is not necessary for the plaintiff to take steps to avoid losses, even though the defendant has actually committed a breach, so long as he has not definitely repudiated the contract and continues to assure the plaintiff that performance will take place. Losses are not regarded as avoidable if the defendant himself prevents the plaintiff from taking the steps necessary to avoid them." 5 Corbin on Contracts § 1039 at 249–50 (1964).

In our view appellant Mayfield could not participate in compromise negotiations over an extended period representing to Stool that he would perform the work and then, upon his failure to do so, attempt to charge Stool with failure to make a reasonable effort to minimize the damage. See *Shell Pipe Line Corp. v. Harris*, 68 S.W.2d 236, 238 (Tex.Civ.App.–Austin 1934, no writ). These points are overruled.

Lastly, appellants assert that the trial court erred in not enforcing the liquidated damages provision of the contract by rendering judgment for damages for delay in excess of $3,000.00 as provided by the liquidated damages clause. As heretofore noted, the parties added a provision for the original contract which provided that if Mayfield did not complete the residence in 200 days, an amount of $50.00 per day would be deducted from the contract price for a period not to exceed 60 days–a maximum sum of $3,000.00.

The question arises whether this provision relating to liquidated damages is to be construed as an agreement fixing the

list. This is a valid modification of the contract by mutual consent of the parties. See 13 Tex. Jur.2d § 267 at 496 (1960). Additionally, Arti-

cle 6 of the contract provides that the "owner shall make final payment thirty (30) days after completion of the work."

damages recoverable for breach of the agreement or whether the same is to be regarded as penalty. If such a provision was for a penalty to secure the performance of a contract, it is unenforceable; however, if the provision was actually intended as and was a reasonable forecast or estimate of the damages which would be sustained in case of breach, it is enforceable if such harm or damage was very difficult or impossible to determine. *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952); *Loggins Construction Co. v. Stephen F. Austin State University Board of Regents*, 543 S.W.2d 682, 685 (Tex.Civ.App.–Tyler 1976, writ ref'd n.r.e.); *Muller v. Light*, 538 S.W.2d 487, 488 (Tex.Civ.App.–Austin 1976, writ ref'd n.r.e.).

In our judgment this provision should be construed as a valid provision for liquidated damages and is, therefore, enforceable. Under the record before us, it is likely that the parties actually intended the provision to be an estimate of the damages sustained by Stool as a result of an increased interest rate in the event Mayfield did not complete the residence in 200 days. Before Stool accepted Mayfield's bid, the parties carefully negotiated the liquidated damages provision to insulate Stool from increased costs of interim financing or increased interest rates which would result from a delay in completion of the residence. Moreover, liquidated damages are a reasonable forecast of just compensation for harm caused by Mayfield's breach. Since, in response to special issue No. 5, the jury found that Stool suffered $3,794.96 because of increased interest expense resulting from Mayfield's failure to complete timely the residence, it is clear that a reasonable relationship exists between Stool's actual damages and the amount of damages computed under the liquidated damages provisions. Finally, it is apparent that the harm caused by Mayfield's breach would be difficult to estimate because of the uncertainty of the fluctuations in the interest rates which, indeed, was the very reason why the parties negotiated the liquidated damages provision. In sum, we conclude that the trial court erred in refusing to enforce the liquidated damages provision by rendering damages in excess of $3,000.00 for increased interest expense resulting from Mayfield's failure to perform timely. Under Tex.R. Civ.P. 435 there is conferred upon us the power to modify the trial court's judgment and to render such judgment as should have been rendered against the appellants by the court below. See *Finch v. McVea*, 543 S.W.2d 449, 453 (Tex.Civ.App.–Corpus Christi 1976, writ ref'd n.r.e.). Therefore, the trial court's judgment is modified to exclude the award of any damages in excess of $3,000.00 for increased interest expense suffered by appellee Stool. In all other respects the judgment of the trial court is affirmed.

The judgment of the trial court, as modified, is affirmed.