

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00486-CV

**RIVER CITY ROOFING & REMODELING, INC.**,
Appellant

v.

Howard **SOLOMON**,
Appellee

From the County Court, Guadalupe County, Texas
Trial Court No. 2012-CV-0135
Honorable Robin V. Dwyer, Judge Presiding

Opinion by: Karen Angelini, Justice

Sitting: Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Irene Rios, Justice

Delivered and Filed: August 22, 2018

AFFIRMED

After a bench trial, the trial court rendered judgment against River City Roofing & Remodeling, Inc., for breach of contract. The trial court filed written findings of fact and conclusions of law. In one issue, River City argues the trial court erred in finding breach of contract against River City. We affirm.

## BACKGROUND

In August 2003, River City replaced the roof on Howard Solomon's house. In 2008, Solomon noticed that parts of the roof were discolored and some of the shingles were

disintegrating. In 2010, Solomon notified River City about the condition of his roof. After inspecting the roof, a River City employee told Solomon that the material used on the roof was defective and indicated that the manufacturer would provide Solomon a new roof under the manufacturer's warranty. River City consulted with its supplier about the manufacturer's warranty. The supplier informed River City that the manufacturer required registration within ninety days of installation, and without this registration, the manufacturer's warranty was limited to two years. River City had not registered Solomon's roof with the manufacturer and it had not told Solomon that registration was required for the extended manufacturer's warranty.

Because Solomon's roof was not covered by the extended manufacturer's warranty, Solomon paid another roofing company to remove the defective roof and put a new roof on his house. To recover his damages, Solomon sued River City under several legal theories, including breach of contract. The case went to trial. After hearing the evidence, the trial court found in favor of Solomon on his breach of contract claim and ordered River City to pay Solomon damages in the amount of $24,420.00. River City appealed.

## DISCUSSION

In arguing the trial court erred in finding River City breached its contract with Solomon, River City contends that (1) the trial court violated the parol evidence rule in considering the parties' oral agreement; and (2) the trial court's findings are legally and factually insufficient to support the breach of contract claim.

### 1. Parol Evidence

We first address River City's parol evidence argument. The parol evidence rule is not a rule of evidence, but a rule of substantive law. *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (Tex. 1958). When parties have concluded a valid integrated agreement with respect to a particular subject matter, the parol evidence rule precludes the enforcement of inconsistent prior or

contemporaneous agreements. *Id*. However, the rule does not preclude enforcement of prior or contemporaneous agreements that are collateral to an integrated agreement and are consistent with and do not vary or contradict the agreement's express or implied terms or obligations. *Id*.

To establish the terms of the parties' agreement at trial, Solomon presented both the written proposal River City had prepared for him prior to replacing his roof and witness testimony. On appeal, River City argues that based on the parol evidence rule the trial court should have considered only the written proposal to determine the terms of the parties' agreement. In other words, River City argues the trial court was precluded from considering any other evidence to determine the terms of the parties' agreement. We reject River City's argument for two reasons.

First, in the absence of an integrated agreement, the parol evidence rule does not apply. *See Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738, 744-45 (Tex. App.—Dallas 1990, writ denied) (noting the parol evidence rule applies "when contracting parties have concluded a valid integrated agreement dealing with the subject matter between them…."); *Ragland v. Curtis Mathes Sales Co.*, 446 S.W.2d 577, 578-79 (Tex. Civ. App.—Waco 1969, no writ) (concluding the parol evidence rule applied when the written contract stated it was intended to "set forth the relationship" of the parties and that it contained their "full agreement"). Here, nothing in the written proposal indicates that the parties intended it to be the final and complete expression of their agreement. The written proposal states that River City "hereby submit[s] specifications and estimates" to "tear off existing roof" and "furnish and install Metal Works Aston Wood metal shingle roof." It further states River City "[p]ropose[s] hereby to furnish material and labor – complete in accordance with the above specifications, for the sum of" "$24,420.00." The written proposal also states, "Any alteration or deviation from above specifications *involving extra costs* will be executed only upon written orders, and will become an extra charge over and above the estimate." (emphasis added). Moreover, the written proposal is signed by a representative from

River City, but not by Solomon. After reviewing the written proposal, we conclude it does not show the parties intended it to be the final and complete expression of their agreement.

Second, even if the parties had intended the written proposal to be the final and complete expression of their agreement, the extrinsic evidence in this case does not involve an inconsistent prior or contemporaneous agreement. "[T]he parol evidence rule does not preclude enforcement of prior or contemporaneous agreements which are collateral to an integrated agreement and which are not inconsistent with and do not vary or contradict the express or implied terms or obligations thereof." *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 874 (Tex. 2010) (internal quotations and citations omitted). In this case, Solomon testified that a River City representative came to his house and showed him brochures about various roofing materials and these brochures said the roofing materials had extended warranties. Solomon further testified that one of these brochures was about the product ultimately placed on Solomon's roof, Dura-Loc, and that Dura-Loc's brochure stated that the product had an extended manufacturer's warranty.[1] Any agreement the parties had concerning an extended warranty was collateral to and consistent with the written proposal and did not vary or contradict its terms.

Because the parol evidence rule does not apply here, the trial court was not precluded from considering extrinsic evidence to determine the terms of the parties' agreement.

### 2. Challenged Findings of Fact

In its brief, River City asserts that the following findings are not supported by legally and factually sufficient evidence: (1) that the representations and warranty as to the supplied roofing

---

[1]Although the written proposal called for the use of "Aston Wood" material, River City installed a different material, "Dura-Loc," on Solomon's roof. At trial, River City's salesman, Monty Hamilton, testified that River City had installed the Dura-Loc material on Solomon's roof instead of the Aston Wood material specified in the written proposal because he and Solomon had had a conversation in which they agreed that the roofing material would be changed.

product was a material part of the express agreement; (2) that the roofing material was faulty and not as represented and failed to conform with the written warranty made part of the contract; (3) that the roofing material installed on Solomon's roof was not as specified and represented; (4) that River City had a contractual duty to file the warranty within ninety days to extend the express manufacturer's warranty; (5) that River City admitted the written warranty existed and was represented to Solomon as part of the contract prior to its execution, and (6) that River City failed to perform express material promises contained in the agreement for which it had no legal excuse.

*Standards of Review*

We review the trial court's findings of fact for legal and factual sufficiency of the evidence under the same standards applied in reviewing a jury's findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). In conducting a legal sufficiency review, we consider the evidence admitted at trial in a light that favors the challenged findings, indulging every reasonable inference available under the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit evidence that favors a finding if a reasonable judge, as the factfinder, could have made the finding, and we disregard evidence that is contrary to the finding unless the trial court could not have disregarded that same evidence. *Id*. at 827. We must determine if the evidence before the trial court allowed it to reasonably reach the challenged findings. *Id*. We uphold the finding if more than a scintilla of competent evidence supports it. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009).

In conducting a factual sufficiency review, we examine the entire record with regard to the challenged findings and consider all the evidence admitted at trial. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We may set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id*.

*Trial Evidence*

At trial, Solomon testified that in 2003 a representative from River City, Monty Hamilton, came to his house, made recommendations about what kind of roof to put on his house, and showed him brochures about roofing materials from various companies, including Dura-Loc. All the roofing materials contained in the brochures had either a lifetime or fifty-year or twenty-five-year warranty. Solomon did not remember having a discussion with Hamilton about the Dura-Loc warranty, but he did remember that the brochure Hamilton showed him contained information about Dura-Loc's warranty. Solomon was certain the Dura-Loc warranty was for twenty-five or fifty years. Solomon said a long-term warranty was an important part of purchasing a roofing product for his house, and he would not have put a roof on his house that did not have a long-term warranty. According to Solomon, no one from River City told him that he was required to register the warranty with Dura-Loc. Additionally, Solomon testified that when Hamilton inspected the disintegrating roof in 2010, Hamilton told him that the roofing material was defective and that the manufacturer would have to be responsible for a new roof.

River City's representative, Hamilton, also testified at trial. Hamilton testified that he does not discuss manufacturers' warranties with customers, and that he only gives brochures to customers if they request them. According to Hamilton, River City does not have any brochures that discuss Dura-Loc's product and its warranties. However, Hamilton said it was possible that River City had some Dura-Loc brochures in 2003. Hamilton claimed that in his experience, roofing companies did not submit warranties for their customers. Additionally, Hamilton said that, apart from the representations in the written proposal, he did not make any other representations to Solomon about the materials used on his roof. And, according to Hamilton, he had never told Solomon that he was going to submit the manufacturer's warranty on Solomon's behalf. Finally, Hamilton testified that he did not recall any conversations that he had had with Solomon in 2003.

Next, River City's office manager, Lara Nickelson, testified that after Hamilton met with Solomon about his defective roof in 2010, she attempted to contact Dura-Loc about the manufacturer's warranty. She learned that Dura-Loc was no longer in business, and therefore, contacted River City's insurance company. According to Mrs. Nickelson, it was rare for River City to register a warranty. The only warranties she ever registered were "watertightness warranties through a company called Berridge." However, Mrs. Nickelson testified that if a warranty registration was required she "would assist in any way that she could, whether it was by helping the customer fill out a form or giving [the homeowner] the link to where [he] fills out the form." Mrs. Nickelson further testified that River City does not typically deal with homeowners; it primarily works with builders. However, Mrs. Nickelson explained that when River City works with homeowners and orders the roofing material for installation, its supplier will inform River City about the product's warranty registration requirements. She will then contact the homeowner about the warranty registration, and she and the homeowner will fill out the necessary paperwork. Mrs. Nickelson also agreed that if a warranty registration was required and River City knew that it was required, the duty would fall on River City to notify the homeowner of the warranty registration requirement. Finally, Mrs. Nickelson testified that, in this case, the supplier would have notified River City about any warranty registration requirement when River City purchased the material for Solomon's roof.

River City's owner, Vick Nickelson, testified that warranties are usually not explained to River City's customers because "[m]ost of the people that come to us already have products, and they know what the warranty is on the product. They've researched it." Nickelson also testified that it was not River City's practice to submit warranties on the materials it purchases on behalf of homeowners and, to his knowledge, River City had never registered a warranty on behalf of any homeowner.

Finally, Phillip Wagenfuhr, a claims adjuster, testified that he had researched and evaluated an insurance claim involving Solomon and River City. Wagenfuhr had met with Hamilton about this claim. Hamilton told Wagenfuhr that the manufacturer's warranty should have been filed and it was not. Hamilton also told Wagenfuhr that no one actually sends the warranty card to the manufacturer, but the manufacturers still honor the warranties. Wagenfuhr acknowledged that he had prepared a report regarding the claim. Wagenfuhr's report, which was admitted in evidence, stated: "Mr. Hamilton admitted that [River City] 'should' have registered the warranty; however, [River City] 'assumed' that the manufacturer would still honor the warranty."

*Analysis*

River City begins its argument by challenging the following findings: (1) that the representations and warranty as to the supplied roofing product was a material part of the agreement; (2) that the roofing material failed to conform to the written warranty made part of the express agreement; (3) that River City had a contractual duty to file the warranty within ninety days to extend the manufacturer's warranty; and (4) that River City represented the manufacturer's warranty was part of the contract prior to execution.

River City asserts there is no evidence that it represented that a manufacturer's warranty was part of its proposal to replace Solomon's roof, that it had a contractual duty to register the extended warranty, or that it admitted it had failed to file the warranty documents. However, some evidence exists from which a reasonable factfinder could have found that River City represented that a manufacturer's warranty was part of its proposal to replace Solomon's roof, that River City had a contractual duty to register the extended warranty, and that River City admitted that it had failed to file the warranty documents. The evidence shows the following. During the sales process, River City provided Solomon with brochures stating that Dura-Loc roofing material had an extended warranty. The Dura-Loc roofing material had, at a minimum, a twenty-five-year

manufacturer's warranty. A long-term warranty was important to Solomon and he would not have purchased a roof that did not have a long-term warranty. The parties agreed that River City would install Dura-Loc roofing material on Solomon's roof. Almost seven years later, after the roofing material on Solomon's roof had failed, a River City representative, Hamilton, indicated that the manufacturer would be responsible for replacing Solomon's roof. Hamilton also told an insurance adjuster that River City should have registered the warranty with the manufacturer. Additionally, the evidence showed the supplier generally notified River City of any extended warranty registration requirements and the duty was on River City to notify the homeowner of any such warranty registration requirements. Because the warranty was not timely registered, the roofing material installed on Solomon's roof did not have the extended manufacturer's warranty that was part of the parties' agreement.

River City emphasizes parts of Solomon's testimony in which Solomon stated that he had relied on the warranty in the Dura-Loc brochure, that Hamilton had never told Solomon that River City was going to register the warranty for him, that Solomon had never asked River City what he needed to do to register the warranty, and that Solomon assumed that Hamilton would have told him if he needed to register the warranty. However, Solomon also testified that Hamilton had provided Solomon with brochures about the Dura-Loc material during the sales process, and these brochures stated that the Dura-Loc material came with an extended warranty. Additionally, Solomon testified that when Hamilton inspected the disintegrating roof in 2010, Hamilton indicated to Solomon that the manufacturer would be responsible for replacing the defective roofing material.

River City further asserts that the challenged findings are "contradicted" by the testimony of its representatives. River City emphasizes the testimony of its representatives indicating that it was uncommon for River City to register warranties. This testimony, however, was undermined

by Mrs. Nickelson's testimony that the supplier generally informed River City if a product needed registration and that she would register products when it was necessary. River City also points out that its representatives testified that they do not often discuss product warranties with customers. This testimony, however, was countered by Solomon's testimony that during the sales process Hamilton had presented Solomon with various brochures about roofing materials, all of which had long-term warranties. As the factfinder, the trial court was the sole judge of the credibility of the witnesses, and it could choose to believe one witness and disbelieve another. *See City of Keller*, 168 S.W.3d at 819.

Next, River City complains about the trial court's finding that "[t]he roofing material installed on [Solomon's] roof was not as specified and represented." River City argues this finding is erroneous because the written proposal does not refer to the manufacturer's specifications or representations. According to River City, "There is not a scintilla of evidence to support a conclusion that the proposal refers to or incorporates any manufacturer's brochure, specifications or representations as a term or condition of the proposal." However, as previously discussed, the trial court was not confined to the written proposal to determine the terms of the parties' agreement. The trial court could have considered, and obviously did consider, the witnesses' testimony and the other evidence admitted in determining the terms of the parties' agreement.

We conclude that more than a scintilla of evidence exists to support the challenged findings, and the challenged findings are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. After reviewing the evidence under the appropriate standards of review, we conclude the challenged findings are supported by legally and factually sufficient evidence.

Further, we conclude the trial court did not err in its legal conclusion that River City breached its agreement with Solomon. We review the trial court's legal conclusions drawn from

the facts to determine their correctness. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). A breach of contract occurs when a party fails or refuses to perform an act or thing that it has expressly or impliedly promised to do. *Greene v. Farmers Ins. Exchange*, 446 S.W.3d 761, 765 (Tex. 2014); *Fidelity and Deposit Co. of Maryland v. Stool*, 607 S.W.2d 17, 24 (Tex. Civ. App.—Tyler 1980, no writ). As detailed above, the evidence in this case showed that River City promised to provide Solomon with roofing material that had an extended manufacturer's warranty, and that River City failed to perform this promise. The trial court did not err in concluding that River City breached its agreement with Solomon.

CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice