**BUILDING CONCEPTS, INC.,**
Appellant-Appellee,

v.

**Marvin Woodrow DUNCAN, et ux,**
Appellees-Appellants.

**No. A14–82–675CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 16, 1984.

Rehearing Denied March 8, 1984.

Jacalyn D. Scott, Bonham, Carrington & Fox, Houston, for appellant-appellee.

Atreus M. Clay, Mike Cokins, Law Offices of Atreus M. Clay, Houston, Thomas F. Lay, Pasadena, for appellees-appellants.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

DRAUGHN, Justice.

Mr. and Mrs. Marvin Duncan instituted this suit against Building Concepts, Inc. and Southmore Savings Association ("Southmore"), seeking damages under the Deceptive Trade Practices Act (Tex.Bus. & Com.Code Ann. § 17.41 et seq.) ("DTPA"). The suit arose from a breach of contract for construction of their residence. Building Concepts, Inc. counterclaimed for recovery under the contract, or in quantum meruit, for labor done and materials furnished in constructing the Duncans' residence.

At the conclusion of plaintiffs' case, the trial court directed a verdict for Southmore. Based upon a jury verdict, the court awarded the Duncans treble damages of $34,050, plus attorney's fees. In addition,

it cancelled the mechanic's lien assigned to Southmore by Building Concepts. Building Concepts, Inc., in turn, recovered $49,-625.60 in damages ($38,490 for labor and material furnished and $10,855.60 in prejudgment interest), plus attorney's fees. Both parties have appealed from the judgment below. We affirm in part, and reverse and render in part.

On or about October 12, 1976, the Duncans and Building Concepts, Inc. entered into a mechanic's and materialman's lien contract with power of sale, whereby Building Concepts agreed to construct a residence on the Duncans' property. The Duncans paid Building Concepts a total of $1,500 as a down payment, and executed a mechanic's lien note for $44,300. Building Concepts assigned the note and lien to Southmore Savings Association to secure an interim construction loan of $44,300. In a separate transaction, Southmore made a commitment for nine months to the Duncans for a permanent loan on their home at the conclusion of its construction. In August 1977, Southmore gave the Duncans, at no charge, a two month extension on their permanent loan commitment, because Building Concepts had not completed the house. The house was still unfinished at the end of this two month period, and the Duncans purchased another one and one-half month extension from Southmore for $215. In November 1977, Building Concepts ceased work on the Duncans' home. The house was never completed by Building Concepts, the Duncans never paid the contract price, and this litigation resulted.

In answer to special issues, the jury found the following:

(1) Building Concepts failed to construct the Duncans' house in accordance with the plans and specifications;

(2) such failure was a producing cause of damages to the Duncans;

(3) Building Concepts did not fail to construct the house in a good and workmanlike manner;

(4) Building Concepts did not represent that the Duncans' house would be built in 120 days;

(5) Building Concepts represented to the Duncans that it would supervise and adequately inspect the work of its employees, sub-contractors, and/or agents;

(6) such representation was false, misleading, or deceptive;

(7) such representation was a producing cause of damages to the Duncans;

(8) Building Concepts abandoned the construction of the house in November 1977;

(9) Building Concepts did not substantially perform the contract;

(10) the reasonable cost of completing the Duncans' house in a good and workmanlike manner according to the plans and specifications in October 1977 was $7,500;

(11) the reasonable cost of completing the house in a good and workmanlike manner according to plans and specifications at the time of trial was $15,000;

(12) the reasonable value of the labor and material furnished by Building Concepts to construct their residence was $38,490;

(13) the market value of the Duncans' home as constructed in November 1977 was $44,790;

(14) the Duncans suffered damages in the following amounts: (a) value of commitment money paid to Southmore—$820; (b) value of stolen carpet—$500; (c) expense of storing furniture—$2,530;

(15) the value of unauthorized improvements made by Building Concepts was $4,520;

(16) the value of the Duncans' attorney's fees was $15,300;

(17) the value of Building Concepts' attorney's fees was $3,975.

## MR. AND MRS. DUNCAN

In their first point of error, Mr. and Mrs. Duncan contend the trial court erred in directing a verdict for Southmore Savings. We disagree. In determining the propriety of a directed verdict for Southmore, we must view the evidence in the light most favorable to the party against whom the verdict is instructed. Where there is any evidence of probative value in

favor of the losing parties, the issue must be determined by the jury. A directed verdict is warranted only when the evidence shows that no other verdict can be rendered and the winning party is entitled to judgment as a matter of law. *Texas Employers Insurance Ass'n. v. Page*, 553 S.W.2d 98 (Tex.1977); *White v. White*, 141 Tex. 328, 172 S.W.2d 295 (1943). We do not quarrel with the Duncans' standing to pursue a cause of action under the DTPA against Southmore in this case. *See Flenniken v. Longview Bank & Trust Company*, 661 S.W.2d 705 (Tex.1983). However, in accordance with § 17.50(a) of the DTPA, the Duncans were still required to show that they were adversely affected[1] by a false, misleading or deceptive act or an unconscionable action, if any, committed by appellee Southmore. To support the contention that they were adversely affected by Southmore's actions, the Duncans rely on one or more conversations they had with an employee of Southmore. The discussion involved the possibility that Southmore might be forced to foreclose the Duncans' lien assigned to them by Building Concepts, if Building Concepts failed to pay on its note. We find nothing in the record to show how such discussions harmed the Duncans. In fact, Southmore did not at any time institute proceedings, nor did they tell the Duncans they were in the process of instituting any proceeding. In addition, there is no evidence that the Duncans relied on the conversations, causing delay and damages in the completion of their house. We hold the trial court properly directed a verdict for Southmore Savings Association, and overrule the Duncans' first point of error.

■ In point of error two, the Duncans argue the trial court erred by failing to allow recovery for the reasonable cost of completing their house as of the trial date, rather than the date Building Concepts breached its construction contract.

The DTPA was intended to permit a plaintiff to recover the greatest amount of "actual damages" he has alleged and proved to be caused by defendant's conduct, including related reasonable and necessary expenses. *Hyder-Ingram Cheverolet, Inc. v. Kutach*, 612 S.W.2d 687 (Tex. Civ.App.—Houston [14th Dist.] 1981, no writ); *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). However, the Act does not extend the scope of "actual damages" beyond the rules of common law. *American Transfer and Storage Co. v. Brown*, 601 S.W.2d 931, 939 (Tex.) cert. denied, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); *Harrison v. Dallas Court Reporting College, Inc.*, 589 S.W.2d 813, 816 (Tex.Civ.App.—Dallas 1979, no writ).

■ We find nothing in the record to support the Duncans' contention that any deceptive acts of Building Concepts in 1976 and in 1977 caused delay in completion of the home until the trial in 1982. Mr. and Mrs. Duncan testified that Building Concepts' lien on their property prevented them from having the house completed, because they did not have cash available for the needed repairs. However, Mr. Duncan admitted that while he thought about having the repairs made, he never obtained an estimate for the cost of repairs, and knew only that it would "cost money." He further testified that he had questioned only one contractor, some time prior to November 1979, about making any necessary repairs, and was told he would have to pay cash.

While it is established that actual damages may extend beyond the immediate time of a deceptive act, we believe the damages alleged must bear some reasonable relation in time and circumstances to the producing cause of such damages. The Duncans have failed to adequately show such a relationship. We overrule appellants' second point of error.

■ In point of error three, appellants contend the trial court erred by refusing to allow evidence on additional damages for

---

1. This language was amended in 1979 to read: "a consumer may maintain an action where any of the following constitute a *producing cause* of actual damages...." § 17.50(a)

(a) the increased interest costs to finance a home since the date of their original loan commitment, and (b) the taxes and insurance costs paid on the property.

Upon review of the record, it is apparent that the Duncans were allowed to present some evidence regarding increased financing costs from 1976 to the time of trial, despite objections by defendant. Therefore, we find no merit in this contention. The Duncans also attempted to introduce into evidence the costs of insurance and taxes paid subsequent to the breach. The trial court sustained Building Concepts' objections to the introduction of testimony and exhibits concerning these matters. At the time the objections were sustained, the Duncans agreed to make a bill of exceptions at the close of their case; however, they failed to do so. Thus, any error alleged has been waived. *See American Transfer & Storage*, 601 S.W.2d at 936.

In their fourth point of error, the Duncans claim the trial court erred in awarding prejudgment interest on the damages sustained by Building Concepts. The court rendered judgment in favor of Building Concepts for the value of work done and materials furnished, and allowed prejudgment interest at the rate of six percent (6%) from the date work on the Duncans' residence was abandoned to the date of judgment.

■ It is well settled that where damages are established at a definite time, and the amount is definitely determinable, interest is recoverable from the date of injury. *Imperial Sugar Co., Inc. v. Torrans*, 604 S.W.2d 73 (Tex.1980); *Black Lake Pipe Line Co. v. Union Construction Co., Inc.*, 538 S.W.2d 80 (Tex.1976). The Duncans argue that the present case is distinguishable because the measure of damages was not fixed by conditions at the time of injury. We disagree. The measure of damages in quantum meruit was fixed at the time Building Concepts abandoned work on the Duncans' home. The Duncans' fourth point of error is overruled.

■ In point number five, the Duncans contend the trial court erred by awarding attorney's fees to Building Concepts. We

disagree. A party who is entitled to recover in quantum meruit for labor and material actually rendered is also entitled to recover attorney's fees. *See Olivares v. Porter Poultry Egg Co.*, 523 S.W.2d 726 (Tex. Civ.App.—San Antonio 1975, no writ); *Rueger v. DeWylf*, 566 S.W.2d 47 (Tex.Civ. App.—Beaumont 1978, writ ref'd n.r.e.); TEX.REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1982–1983). This point is overruled.

## BUILDING CONCEPTS, INC.

■ In its fourth point of error, Building Concepts claims there is no evidence to support jury findings of damages for the following:

| | |
|---|---|
| (a) value of commitment money paid to Southmore Savings | $820.00 |
| (b) value of stolen carpet | $500.00 |
| (c) expense of storing furniture | $2,530.00 |

There is evidence of probative value in the record from which the jury could have found that the acts of Building Concepts caused the Duncans to suffer the damages listed in items (a) and (c). However, we believe that item (b), the value of the stolen carpet, was included in the cost to complete repairs on the house. To let that amount stand would allow the Duncans a double recovery for this item. We sustain, in part, Building Concepts' point of error four.

In its first point of error, Building Concepts contends the trial court erred by trebling the damages awarded the Duncans, since the court was required to deduct allowable set-offs established by Building Concepts prior to trebling. We agree.

■ Actual damages incurred under § 17.50(b)(1) of the DTPA are determined by the total loss sustained by a party as a result of the deceptive trade practices, and reduced by any allowable set-offs. *Durham v. St. John*, 645 S.W.2d 261 (Tex. 1983); *Smith v. Baldwin*, 611 S.W.2d 611 (Tex.1980). Therefore, any damages awarded Building Concepts should be set off against the sum awarded the Duncans to determine if there is a net recovery subject to trebling. The Duncans were

damaged in the amount of $10,850. Building Concepts, Inc. was entitled to a set-off of $49,625.60, the amount of their counterclaim in quantum meruit. This results in a net recovery of $38,775.60 for Building Concepts. The Duncans suffered no net damage. We sustain Building Concepts' first point of error.

■ In its second point of error, Building Concepts contends the trial court erred by allowing the Duncans to recover under the DTPA, because they failed to establish the necessary elements for recovery under the Act.

In answer to Special Issues Nos. 1 and 2, the jury found that Building Concepts failed to construct the house in accordance with the plans and specifications, and that such failure was a producing cause of damages to the Duncans. The jury also found that the home had been constructed in a good and workmanlike manner. The Duncans claim that by agreeing to build according to the plans and specifications, Building Concepts impliedly warranted it would do so.

We do not believe there is any showing of such implied warranty in this case. In paragraph V of their contract, Building Concepts made the following warranties:

Contractor hereby warrants the material used, labor and workmanship for a period of one year, that they are of the quality or performance acceptable in the trade, and are set forth in the contract documents. Contractor agrees to correct, without expense to, and to the satisfaction of, the Owner, any defects that may develop in material, workmanship, and design during the period of warranty. *No other warrants expressed or implied are given herewith.* (Emphasis added.)

By express provision of the contract, the Duncans have waived an implied warranty, if any, that Building Concepts would build their residence in accordance with the plans and specifications.

■ In answer to Special Issues Nos. 9, 10, and 11, the jury found that Building Concepts, (a) represented to the Duncans that it would supervise and adequately inspect the work of its employees, sub-contractors and/or agents; (b) that such representation was false, misleading or deceptive; and (c) that such representation was a producing cause of damage to the Duncans. Building Concepts claims there is no evidence that the representation made was a deceptive trade practice. We disagree.

The record reflects that Building Concepts' agreement to supervise and inspect the work of its employees was made a part of the building contract signed by the parties. We hold that the jury could reasonably infer from the agreement, and from Building Concepts' failure to fulfill its obligations, that a deceptive trade practice occurred. *See Spradling v. Williams,* 566 S.W.2d 561 (Tex.1978). We overrule Building Concepts' second point of error.

■ In point of error three, Building Concepts contends the trial court erred in finding $7,500 to be the cost of completing the Duncans' house in October 1977, because there is no evidence to support such finding.

Mark Stamey, a building contractor, testified for the Duncans concerning the cost to complete their home according to plans and specifications. These costs were as follows:

| | |
|---|---|
| Completion of 25 items set out in October, 1977 letter | $2,500.00 |
| Cost to replace roof | $2,500.00 |
| Cost to replace carpet | $1,800.00 |
| Cost to replace cabinets | $1,000.00 |
| Total | $7,800.00 |

Mr. Jackson, expert witness for Building Concepts, testified that it would cost no more than $500 to complete the house. Mr. Wright, president of Building Concepts, testified it would cost no more than $1,000 to complete the house. Neither of these estimates accounted for replacement of the roof, kitchen cabinets, or carpet.

The jury is the exclusive judge of controverted issues of fact raised by the evidence, as well as the credibility of the witnesses and the weight to be given their testimony. *Lynch v. Ricketts,* 158 Tex. 487, 314 S.W.2d 273, 276 (Tex.1958); *Johnson v. Buck,* 540 S.W.2d 393, 401 (Tex.Civ.App.—

Corpus Christi 1976, writ ref'd n.r.e.). In light of this well settled rule, we hold there was sufficient evidence to sustain the jury's finding that the cost to complete the home was $7,500. We overrule point of error three.

■ In point of error seven, appellant contends the trial court erred by rendering two judgment amounts, because as a matter of law the court was required to offset the amount of damages established by the Duncans against the amount of Building Concepts' counterclaim, and to render judgment in favor of Building Concepts for the excess. We agree.

TEX.R.CIV.P. 302 provides:

If the defendant establishes a demand against the plaintiff upon a counterclaim exceeding that established against him by the plaintiff, *the court shall render judgment for defendant for such excess.* (Emphasis added.)

*See also Willingham v. Hagerty,* 553 S.W.2d 137 (Tex.Civ.App.—Amarillo 1977, no writ). We sustain Building Concepts seventh point of error.

In point of error five, Building Concepts contends there is no evidence, or insufficient evidence, to support the award of attorney's fees to the Duncans. We disagree.

■ We recognize that attorney's fees must be reasonable under the circumstances of each case and bear some reasonable relationship to the amount in controversy or the amount recovered. *Allied Finance Co. v. Garza,* 626 S.W.2d 120, 127 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Argonaut Ins. Co. v. ABC Steel Products Co., Inc.,* 582 S.W.2d 883, 889 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). This court, in determining whether an award of attorney's fees is excessive, is authorized to look to the entire record in the case, and to view the matter of reasonableness in light of the evidence presented on the matter, the entire record, the amount in controversy, and our common knowledge and experience as lawyers and judges. *Allied Finance Co. v. Garza,* 626 S.W.2d at 127; *Wenk v. City National Bank,* 613 S.W.2d 345, 352 (Tex.Civ.App.—

Tyler 1981, no writ). If the award is found to be excessive, it is the appellate court's duty to reduce it. *Argonaut,* 582 S.W.2d at 889.

■ Mr. Clay, attorney for the Duncans, testified that he spent 84 hours from June 6, 1977 to January 1979, preparing the Duncans' case at an hourly rate of $75. He testified that he spent an additional 84 hours of preparation time until the trial at an hourly rate of $150. Based on this testimony, the jury awarded $18,740 as attorney's fees. The Duncans sought to recover $85,000 in damages due to Building Concepts' deceptive acts. Building Concepts sought to recover at least $73,500 on its counterclaim. The Duncans' attorney was required to prepare not only his case, but also a defense to defendant's counterclaim. In our judgment, the award of attorney's fees was not excessive.

We do not agree with Building Concepts' argument that Mr. Clay was required to distinguish between the time spent in prosecuting the Duncan's claim and that spent in defending the counterclaim. We feel the work done for both of these matters was so closely linked that there was no necessity to separate the amount of time and work done for each. *See Schepps Grocery Co. v. Burroughs Corp.,* 635 S.W.2d 606 (Tex.App.—Houston [14th Dist.] 1982, no writ); *First-Wichita National Bank v. Wood,* 632 S.W.2d 210 (Tex.App.—Fort Worth 1982, no writ). We overrule point of error five.

■ In point of error six, Building Concepts claims the trial court erred in awarding attorney's fees to the Duncans, because, with no net recovery, there can be no judgment for actual damages in their favor. It has been held by this Court, and others, that a consumer must obtain a *judgment for actual damages* before he may recover attorney's fees. The reasoning for this is that the Texas Supreme Court has held a party must sustain actual damages, i.e., must have a net recovery in his suit, to obtain treble damages. It is argued the same standard should logically be applied to attorney's fees. *See Smith v.*

*Baldwin,* 611 S.W.2d 611 (Tex.1981); *see also Widmer v. Stamps,* 663 S.W.2d 875 (Tex.App.—Houston [14th Dist.], 1983, no writ); *Cordrey v. Armstrong,* 553 S.W.2d 798 (Tex.Civ.App.—Beaumont 1977, no writ); *United Postage Corp. v. Kammeyer,* 581 S.W.2d 716 (Tex.Civ.App.—Dallas 1979, no writ).

Section 17.50(b)[2] of the DTPA reads as follows:

In a suit filed under this section, each consumer who prevails may obtain:

(1) three times the amount of actual damages *plus court costs and attorney's fees reasonable in relation to the amount of work expended* (emphasis added);

(2) an order explaining such acts or failure to act;

(3) orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter; and

(4) any other relief which the court deems proper, including the appointment of a receiver or the revocation of a license or certificate authorizing a person to engage in business in this state if the judgment has not been satisfied within three months of the date of the final judgment.

It is our opinion that a consumer is not required to obtain a net *judgment* for actual damages (or for some other form of relief listed in § 17.50(b)) in order to obtain attorney's fees and court costs, so long as the consumer prevails on the original claim for damages. This is the case, despite any allowable set-offs which may preclude a net recovery of damages by the consumer.

It is well recognized that the DTPA should be construed to promote its underlying purpose which is to protect consumers against deceptive trade practices. TEX. BUS. & COM.CODE ANN. § 17.44 (Vernon Supp.1982–1983). We do not believe the legislature intended to discourage a consumer from filing suit under the Act, and

obtaining damages, only to be denied attorney's fees because the sum awarded on the claim (no matter how substantial the deceptive acts might be) has been offset by the other party's counterclaim. A consumer victimized by a deceptive practice can seldom be certain that the lawsuit will yield a net recovery. Nevertheless, in order to give real meaning to the Act and to penalize for deceptive trade practices, the consumer must have uninhibited access to the courts. Unlike the trebling of damage feature, to make attorney's fees contingent on a net recovery would tend to discourage the initiation of modest but justifiable suits under the Act. Indeed, residential construction contracts generally would tend to have large counterclaims. We, therefore, feel strongly that denying attorney's fees where a deceptive trade practice is found would undermine the very nature of the Act, which is to protect the consumer. In regard to this point, we find ourselves in rare disagreement with another panel of this court. *See Widmer v. Stamps, supra.* While we respectfully acknowledge this reasonable difference of opinion, we feel that our decision here is more in harmony with the stated purposes of the Act. Thus, we overrule point of error six.

■ In point of error eight, Building Concepts argues the trial court erred by taxing forty-eight percent of the court costs against it. We disagree. TEX.R. CIV.P. 131 provides that the successful party to a lawsuit shall recover from the adversary all costs incurred therein except as otherwise provided. TEX.R.CIV.P. 303 states:

Whenever a counterclaim is pleaded, the party in whose favor final judgment is rendered shall also recover the costs, unless it be made to appear on the trial that the counter claim of the defendant was acquired after the commencement of the suit, in which case, if the plaintiff establishes a claim existing at the commence-

---

**2.** In 1979, the language regarding court costs and attorney's fees was changed and moved to a new section, 17.50(d). The new section provides that "[e]ach consumer who prevails shall be awarded costs and attorney's fees."

ment of the suit, he shall recover his costs.

Rule 141 gives the trial judge discretion to assess costs otherwise than as provided by law or the rules, for good cause, to be stated on the record. It is apparent from the record that the judge assessed the costs as he did because *both* parties successfully prosecuted their claims. While we agree that the claims for damages must be offset, the judgment will still reflect an award of attorney's fees to the Duncans. Therefore, we hold the trial court did not err in assessing a portion of the costs to each party. We overrule point of error eight.

In point of error nine, Building Concepts argues the trial court erred by deducting $4,520 from the market value of the Duncans' home because the evidence established as a matter of law that Mr. Duncan had requested such additions. In the alternative, they claim the court's finding was against the great weight and preponderance of the evidence. We cannot support either of these contentions.

Mr. and Mrs. Duncan testified in court that while they had asked Building Concepts about making the changes in question, they had requested a written estimate before giving their approval of the change. The written estimate which appears in the record was given to the Duncans after the changes were made. On cross-examination, a portion of Mr. Duncan's deposition testimony was introduced to show that Mr. Duncan had previously stated that he requested the changes. Building Concepts claims such statements constituted a judicial admission. We disagree. The testimony of Mr. Duncan which appears in the record regarding the changes is clearly conflicting, and thus, cannot be considered a judicial admission, or binding on the Duncans. *See Mendoza v. Fidelity & Guaranty Insurance Underwriter, Inc.,* 606 S.W.2d 692 (Tex.1980).

Mr. Jackson, a building contractor for Building Concepts, testified that Mr. Duncan agreed verbally to the changes, and Mr. Jackson said he told Mr. Duncan he would keep him informed of the approxi-

mate costs as he went along. He testified he sent Mr. Duncan a written estimate two or three weeks prior to the scheduled closing date.

It is well settled in Texas that it is within the province of the trier of fact to judge the credibility and weight to be given the witnesses' testimony, to resolve conflicts and inconsistencies in the testimony of any one witness, as well as among different witnesses. It is also within the jury's province to believe one witness and disbelieve another, or to believe part of the testimony of a witness and disbelieve another part. *Lilley v. Southern Pacific Transportation Co.,* 584 S.W.2d 720 (Tex. Civ.App.—Tyler 1979, no writ); *Jim Walter Homes, Inc. v. Castillo,* 616 S.W.2d 630 (Tex.Civ.App.—Corpus Christi 1981, no writ). We overrule Building Concept's ninth point of error.

The judgments of the trial court below are reversed in part, and judgment is rendered for Building Concepts, Inc. in the sum of $38,775.60 plus attorney's fees. We affirm both the trial court's award of attorney's fees to the Duncans; and the assessment of court costs as set out in the judgment below.