TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-97-00747-CV







Starlight, L.P./Xarin Austin I, Ltd., Loren Baxter, George Ablin

and Hayden Property Management, Inc., Appellants


v.



Xarin Austin I, Ltd., Loren Baxter, George Ablin and Hayden Property

Management, Inc./Starlight, L.P., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 94-01269, HONORABLE JOSEPH HART, JUDGE PRESIDING






 The opinion and judgment filed herein on September 24, 1998, are withdrawn, and
the following opinion is issued in lieu of the original one.

 Starlight, L.P. sued Xarin Austin I, Ltd. ("Xarin"), Hayden Property Management,
Inc. ("HPM"), Loren Baxter, and George Ablin (collectively "Defendants") for damages arising
out of Starlight's purchase of a commercial building from Xarin. Starlight asserted claims for
common-law and statutory fraud, violations of the Deceptive Trade Practices Act ("DTPA"), (1) and
breach of contract. Xarin counterclaimed seeking judicial foreclosure pursuant to the terms of the
real estate lien note between Starlight and Xarin. The counterclaim was tried to the court, which
ruled in Starlight's favor that Starlight had not defaulted on its obligation. The action for damages
from the sale of the building was tried to a jury, which found in favor of Starlight. However, the
trial court granted Defendants' motion for judgment notwithstanding the verdict ("JNOV"), except
for one claim concerning offset for a settlement agreement between Starlight and HDR
Engineering, a former tenant of the building. Both sides appeal the trial court's judgment. We
will affirm in part and reverse in part.


FACTUAL AND PROCEDURAL BACKGROUND

 On August 31, 1992, Starlight's assignor signed an earnest money contract to
purchase Fountain Park Plaza I (the "Plaza") from Xarin for $1,896,000. The closing occurred
on June 10, 1993, at which time Starlight executed a real estate lien note and deed of trust. The
Plaza is located on IH-35 in Austin, south of Town Lake. It consists of two office buildings, one
being four stories tall and the other being one story.

 Xarin is a California limited partnership, of which Loren Baxter is a general partner
and George Ablin is a limited partner. HPM, operated by Eddie Hayden, was the property
manager for the Plaza before Xarin sold it to Starlight. Starlight is a Texas limited partnership
controlled by Richard Hardin.

 In July 1993, a month after the closing on the sale of the Plaza, Starlight was
contacted by the Texas Department of Health regarding an investigation of air quality at the Plaza. 
On August 31, 1993, Hardin wrote to Baxter requesting information regarding any air quality
problems and stating that Starlight would exercise its right of set-off to cover any repairs needed. 
Xarin denied prior knowledge of any air quality problems, but offered to undo the contract and
take back the building. Declining to rescind the transaction, Starlight filed suit for defects in the
heating, ventilation, and air-conditioning system ("HVAC") in February 1994. Starlight
apparently first learned of roof leakage problems in March 1994; it subsequently amended its
petition to add a request for damages for roof repairs. Starlight sold the Plaza in October 1994,
allegedly because it could not afford to pay the repair costs of the roof and HVAC.

 In March 1994, the trial court signed an agreed order requiring Starlight to make
note payments into the registry of the court and prohibiting Xarin from taking any action to
accelerate the balance due on the note. In May 1994, Xarin filed a counterclaim asserting that
Starlight was in default on the real estate lien note. The parties agreed to try the counterclaim to
the trial court without a jury. After a trial on the counterclaim, the court rendered judgment
favoring Starlight, concluding that there had been no defaults in any payments under the note and
that Starlight had made all payments due under the note in compliance with the agreed order.

 The remainder of the lawsuit was tried to a jury in May and June 1996. The jury
found that all Defendants except Ablin were liable for common-law fraud, and that all Defendants
were liable for statutory fraud and deceptive trade practices. The jury found the cost of repair to
be $54,677.12 for the roof and $103,500 for the HVAC. The jury found exemplary damages
against Xarin and Ablin, and found additional DTPA damages against Xarin and Baxter. 
Defendants filed a motion for judgment notwithstanding the verdict, which the trial court granted. 
The trial court filed findings of fact and conclusions of law. Both sides appeal.

I.  APPEAL BY XARIN AND THE OTHER DEFENDANTS

 Defendants raise six issues on appeal: (1) There is conclusive evidence that
Starlight defaulted in its payments under the real estate lien note; (2) the trial court's failure to find
that Starlight defaulted in its payments under the real estate lien note is against the great weight
and preponderance of the evidence; (3) there is legally insufficient or (4) factually insufficient
evidence to support the trial court's finding that Starlight timely and properly made all payments
due under the note; (5) the trial court erred in failing to render judgment against Starlight for the
amount due under the note and for judicial foreclosure of Xarin's lien because Starlight was in
default on the note, was given notice of the default, and failed to timely cure the default; and (6)
the trial court erred in failing to award Xarin its attorney's fees.

 In deciding a legal-sufficiency point of error that attempts to overcome an adverse
fact finding as a matter of law, we must first consider only the evidence and inferences tending
to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
If there is no evidence to support the finding, we must then examine the entire record to see if the
contrary proposition is established as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); Texas & N.O.R.R. v.
Burden, 203 S.W.2d 522, 528-31 (Tex. 1947). See generally William Powers, Jr. & Jack Ratliff,
Another Look at "No Evidence" and "Insufficient Evidence", 69 Tex. L. Rev. 515, 523 (1991);
Michol O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. 65, 78-80 (1974). A factual-sufficiency review requires the court to consider and weigh all of the evidence and set aside the
verdict and remand for a new trial if the court concludes that the verdict is so against the great
weight and preponderance of the evidence as to be manifestly unjust. In re King's Estate, 244
S.W.2d 660, 661 (Tex. 1951); First State Bank v. Keilman, 851 S.W.2d 914, 930 (Tex.
App.--Austin 1993, writ denied).

 In issues one through four, Xarin challenges the following conclusions of law made
by the trial court:


13. There have been no defaults in any payment under the Real Estate Lien Note
at any time by Starlight, L.P. because the payments made by it into the
registry of the Court satisfied its obligation under the Real Estate Lien Note
to make monthly payments to Xarin Austin I, Ltd. in the amount of $4,658.91.


14. Starlight, L.P. timely and properly made all payments due under the Real
Estate Lien Note into the registry of the Court in compliance with, and
pursuant to, the Agreed Order and Order on Temporary Injunction entered by
the Court in this case.



 Xarin first argues that between March 25, 1994 and April 19, 1995, there was no
court order shielding Starlight from its obligation to pay Xarin. Xarin points out that the agreed
order required Starlight to make its February 1994 and March 1994 payments into the registry of
the court and that, if successful at a temporary injunction hearing, Starlight would be required to
continue making its monthly payments into the registry of the court. The temporary injunction
hearing was apparently never held. However, on September 7, 1994, Xarin agreed to Starlight's
motion requesting that the deposited funds be placed into an interest-bearing account, which
recited that the agreed order required Starlight to make monthly deposits into the registry of the
court. The trial court granted the agreed motion.

 In October 1994, having sold the Plaza, Starlight filed a motion to deposit the sale
proceeds into the registry of the court. Xarin objected to this motion, asserting that Starlight was
already in default. Beginning in December 1994, Starlight ceased making the monthly payments
into the court's registry. On March 2, 1995, the trial court granted Xarin's motion that the agreed
order be set aside. On March 21, the trial court signed a temporary injunction order that again
required Starlight to make monthly payments into the court's registry, including the payments
from December 1994 through March 1995, and likewise to deposit the sale proceeds into the
court's registry.

 Xarin argues that conclusion of law thirteen conflicts with finding of fact ten, which
states that Starlight did not make payments from December 1994 through March 1995. During
this period, however, Starlight had offered to deposit the entire balance due on the Note into the
registry, but that action was objected to by Xarin. As soon as the trial court resolved the dispute
and ordered Starlight to deposit the payments for December 1994 through March 1995 and the sale
proceeds into the registry, Starlight did so.

 Considering the evidence pertaining to the trial court's conclusions, especially
evidence that all parties operated as if the agreed order continued past March 1995 for several
months and reaffirmed it in the agreed motion to deposit the funds into an interest-bearing account,
we conclude that the record and the trial court's findings support conclusions of law thirteen and
fourteen. We overrule points one through four.

 In its fifth issue, Xarin asserts that the trial court erred in failing to render judgment
against Starlight for the amount due under the promissory note, and for a judicial foreclosure of
Xarin's lien, because Starlight was in default on the note, was given notice of the default, and
failed to timely cure the default. Xarin argues that it was entitled to accelerate the entire debt if
a default occurred and that it gave Starlight the required proper notice of default in January 1995. 
Under the real estate lien note, however, Xarin was not allowed to accelerate or enforce its right
to foreclose on the property in the event of a dispute until a final judicial determination of
Starlight's right to set off the amount in controversy. The agreed order also prohibited such
action. We conclude that Starlight adequately raised the issue of its right to a setoff and that the
trial court did not err in failing to render judgment against Starlight on this issue.

 In its sixth issue raised, Xarin complains that it was not awarded its attorney's fees. 
Having concluded that the court did not err in denying Xarin's counterclaim, we also conclude it
did not err in failing to award Xarin its attorney's fees.


II.  STARLIGHT'S APPEAL

 Starlight's appeal from the trial court's JNOV raises six issues: (1) whether there
was any evidence to support the jury's award of remedial or "cost of repair" damages; (2) whether
Starlight was legally entitled to recover remedial "economic loss" damages for its common-law
fraud, statutory fraud, and DTPA claims; (3) whether the evidence was legally and factually
sufficient to support the trial court's holding that Starlight had waived its claims by failing to give
written notice as provided in the inspection provision of the earnest money contract; (4) whether
the trial court erred in denying Starlight's recovery of exemplary damages awarded by the jury;
(5) whether the trial court erred in denying Starlight's claim for attorney's fees and expert witness
fees; and (6) whether the trial court erred in failing to award Starlight a recovery of its costs.

 A trial court may disregard a jury's findings and grant a motion for JNOV only
when there is no evidence on which the jury could have made its findings. Tex. R. Civ. P. 301;
Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990). In reviewing the grant of the
motion, we review the record in the light most favorable to the jury findings, considering only the
evidence and inferences that support the findings and rejecting all contrary evidence and
inferences. Johnson & Johnson Medical, Inc. v. Sanchez, 924 S.W.2d 925, 929 (Tex. 1996). If 
more than a scintilla of competent evidence supports the jury's findings, the JNOV must be
reversed. Mancorp, 802 S.W.2d at 228.

 The first issue concerns cost-of-repair damages. The Texas Supreme Court recently
reiterated that Texas recognizes two measures of damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure. See Formosa Plastics Corp. v. Presidio
Eng'rs & Contractors, Inc., 960 S.W.2d 41, 49 (Tex. 1998). Texas courts have held that when
property has sustained damage that diminishes its value but does not impair the structure as a
whole, the cost of repairing or restoring the property is an appropriate element of damages. See
Greene v. Bearden Enters., Inc., 598 S.W.2d 649, 653 (Tex. Civ. App.--Fort Worth 1980, writ
ref'd n.r.e.); Wright v. Carpenter, 579 S.W.2d 575, 578 (Tex. Civ. App.--Corpus Christi 1979,
writ ref'd n.r.e.); Drury v. Reeves, 539 S.W.2d 390, 394 (Tex. Civ. App.--Austin 1976, no writ);
Hughes v. Halliday, 471 S.W.2d 88, 90 (Tex. Civ. App.--Waco 1971, no writ).

 In Wright, the court approached the cost to repair as consequential damages. 579
S.W.2d at 578 (cost of repair was suffered as a consequence of appellee's reliance on appellant's
representation). The supreme court has recognized the possibility of recovery for consequential
damages. See Formosa Plastics, 960 S.W.2d at 49 n.1. In the present case, Starlight alleges that
the cost of repairing the roof and HVAC stemmed from Xarin's representation in the contract that
it knew of no material problems. Assuming the sufficiency of the evidence to demonstrate fraud,
we conclude Starlight may recover for the costs to repair the roof and HVAC.

 Starlight next asserts that the evidence was legally sufficient to demonstrate the cost
of repairs. In the earnest money contract, dated August 31, 1992, Xarin represented, among other
things, that there were no material defects in the property or improvements. On the date of
closing, June 10, 1993, Xarin signed a "closing agreement" in which it agreed that "[a]ll
representations and warranties contained in the Earnest Money Contract . . . are hereby renewed
and restated to Purchaser and shall survive closing." The cost to repair the roof was determined
as of May 25, 1994. The cost to repair the HVAC was determined as of March 4, 1994, with a
supplemental determination made on November 4, 1994. The trial court found that Xarin had no
continuing duty to repair building defects after June 10, 1993. The trial court concluded that the
cost to repair should be measured from the date of the sale of the property and that the evidence
of cost to repair was, as a matter of law, too remote in time from the date of sale to constitute any
evidence of such damages.

 Xarin cites several cases to support the trial court's conclusion that cost-of-repair
damages must be measured from the date of the deceptive act. See Odom v. Meraz, 810 S.W.2d
241, 245 (Tex. App.--El Paso 1991), writ denied, 835 S.W.2d 626 (Tex. 1992); HOW Ins. Co.
v. Patriot Fin. Servs. of Tex., Inc., 786 S.W.2d 533, 546-47 (Tex. App.--Austin 1990, writ
denied); Building Concepts, Inc. v. Duncan, 667 S.W.2d 897, 901 (Tex. App.--Houston [14th
Dist.] 1984, writ ref'd n.r.e.); Fidelity & Deposit Co. v. Stool, 607 S.W.2d 17, 24-25 (Tex. Civ.
App.--Tyler 1980, no writ). We believe these cases are distinguishable from the present one.

 In Duncan, the court stated that "[w]hile it is established that actual damages may
extend beyond the immediate time of a deceptive act, we believe the damages alleged must bear
some reasonable relation in time and circumstances to the producing cause of such damages." 667
S.W.2d at 901 (emphasis added). The court found nothing in the record to support the Duncans'
contention that deceptive acts by the builders in 1976 and 1977 caused a delay in completion
continuing until the trial in 1982. The Duncans had purchased another home in 1977 when their
promised home was not finished at that time. Thus, the issue was not the date from which the cost
of damages should have been measured, but whether the earlier deception caused damage that
extended for five years.

 In HOW, this Court described two allowable measures of damages: difference in
value and the "remedial" cost of repair. 786 S.W.2d at 546. We held that to prove the difference-in-value measure, one needed to provide evidence of the difference at the time of the sale. We did
not address at what time the cost-of-repair damages should be measured.

 In Odom, the purchasers of a house brought a DTPA action against the seller for
damages arising from the encroachment of one of their walls onto adjoining property. 810 S.W.2d
at 245. The purchasers asserted that the encroachment clouded title on the property. The only
evidence in the record concerned the loss of a proposed sale of the house, after improvements had
been made, approximately two years after the date of the purchase. The court concluded that this
was no evidence of either benefit-of-the-bargain or out-of-pocket damages at the time of sale.

 In Stool, the court decided that the parties contracted for a cost-of-repair measure
of damages if the contractor failed to conform to the building plans. 607 S.W.2d at 24. The
contractor completed the residence in 1973. In March 1978, after five years of negotiations, the
contractor refused an oral and written request to correct the defects in the house. The court ruled
that the breach occurred in March 1978. The appellants argued that evidence of cost to repair in
the fall of 1978 was insufficient since the breach occurred in March and especially since repair
costs were rising at the time. The court dismissed this argument, concluding that the contractor,
as the party charged with the breach, had the burden to demonstrate any failure to mitigate
damages, but that the contractor had offered no evidence of a failure to mitigate damages.

 In the present case, Starlight obtained cost-of-repair estimates within a reasonable
time of learning of the defects. Accordingly, these estimates provide more than a scintilla of
evidence of the actual damages. No one suggests there was any improper delay in obtaining these
estimates, and there is no evidence of a failure to mitigate damages. We conclude that the
evidence of costs of repair presented in this case was not so remote in time from the date of sale
as to constitute no evidence of such costs. See Jim Walter Homes, Inc. v. Gonzalez, 686 S.W.2d
715, 717-18 (Tex. App.--San Antonio 1985, writ dismissed) (allowing evidence of estimates of
what it would cost to restore home to represented quality rather than what it would have cost on
date of deceptive act). (2)

 The second issue concerns whether Starlight could recover remedial "economic
loss" damages for its common-law fraud, statutory fraud, or DTPA claims. Since the rendition
of the trial court's judgment, the Texas Supreme Court has held that "tort damages are recoverable
for a fraudulent inducement claim irrespective of whether the fraudulent representations are later
subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject
matter of the contract." Formosa Plastics, 960 S.W.2d at 47. We conclude that Starlight can
recover economic damages for its fraud and DTPA actions.

 Xarin asserts that because the representation about which Starlight complains was
made only within the contract, Starlight is limited to a breach of contract action. We disagree. 
Although a contractual relationship could create duties under both contract law and tort law, the
nature of the injury most often determines which duty is breached. Id. at 45, 47. The injury here
flows from Xarin's representation in the contract that the property contained no material defects
when, as found by the jury, Xarin knew of such defects and failed to disclose them to Starlight. 
We conclude that, under these circumstances, Starlight was not limited to an action in contract.

 The third issue concerns the trial court's conclusion that Starlight waived any
objections to the condition of the property by failing to give written notice as provided in the
inspection provision of the earnest money contract. The contract in effect contained an "as is"
clause by which Starlight agreed to accept the property with any defects it may have, subject to
an initial 45-day window during which Starlight could inspect the property and terminate the
transaction if it discovered unacceptable defects. By purchasing property "as is," a buyer agrees
to make its own evaluation of the bargain and accept the risk that it could be wrong. Prudential
Ins. Co. of Am. v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995). However, a buyer
is not bound by an "as is" clause if proof of fraudulent misrepresentation is shown. Id. at 162;
Pairett v. Gutierrez, 969 S.W.2d 512, 516 (Tex. App.--Austin 1998, pet. denied). Because
fraudulent inducement was found here, Starlight did not waive its right to recover for damages
caused by that fraud.

 In its fourth issue on appeal, Starlight asserts that if this Court reverses the JNOV
as to actual damages, Starlight may recover the exemplary damages awarded by the jury. A party
is not entitled to recover exemplary damages unless it recovers actual damages. See Nabours v.
Longview Savs. & Loan Ass'n, 700 S.W.2d 901, 903 (Tex. 1985). The trial court based its denial
of exemplary damages on its conclusion that Starlight could not recover actual damages. Because
we have concluded that Starlight is entitled to recover actual damages, we agree that Starlight may
also recover exemplary damages.

 The fifth issue involves attorney's and expert witness fees. To avoid the possibility
of remand on this issue, the trial court made findings of fact as to the reasonable and necessary
fees of Starlight's attorneys and experts. Because we have concluded that Starlight is entitled to
recover for its damages, it is entitled to recover the attorney's and expert witness fees as
determined by the trial court. See Tex. Bus. & Com. Code Ann. §§ 17.50(d), 27.01(e) (West
1987 & Supp. 1999).

 The sixth issue involves costs. The successful party to a suit is generally entitled
to recover the court costs incurred therein. See Tex. R. Civ. P. 131. In granting the motion for
JNOV, the trial court did not allow Starlight to recover costs from defendants. Because we have
concluded that Starlight is entitled to recover the damages as found by the jury, it should also
recover costs of court.


III.  DEFENDANTS' CROSS-ISSUES

 In their first cross-issue, Defendants assert that the trial court correctly disregarded
the jury's answers to the damages question regarding the cost of repair because Starlight failed to
obtain a jury finding that the defects could not be repaired; therefore, there was no predicate for
the jury's answers, which were based on the cost to replace the roof and HVAC system. See
Turner, Collie & Braden, Inc. v. Brookhollow, Inc., 642 S.W.2d 160, 165 (Tex. 1982) (special
issue would have been proper as submitted had it been predicated on jury finding that line could
not be repaired for less than cost of replacement). Although Defendants assert that Starlight based
its estimates on replacing rather than repairing the roof and HVAC, we are not similarly
persuaded. The evidence to which Defendants point indicates only that certain parts would need
to be replaced in restoring the roof and HVAC. Nonetheless, even though some parts would need
replacing, we do not believe that the result of the process can be characterized as replacement
rather than repair. The jury found the estimates of work to be done to the roof and HVAC to be
reasonable and necessary. Thus, there was no need for a finding that the defects could not be
repaired.

 In their second cross-issue, Defendants assert that the trial court correctly granted
the JNOV as to Defendants Baxter, Ablin, and HPM because Starlight acknowledged that it was
not relying on representations outside the earnest money contract between Xarin and Starlight. 
In the contract, Starlight agreed that:


This Contract constitutes the entire agreement of the parties hereto and, unless
specified otherwise herein, no representation, inducement, promises or prior
agreements, oral or written, between the parties or made by any agent on behalf of
the parties or otherwise shall be of any force and effect.


Defendants assert that this agreement negates a fraudulent inducement claim based on any
representations other than those made in the earnest money contract itself, which were made only
by Xarin.

 In Schlumberger Technology Corp. v. Swanson, 959 S.W.2d 171, 174 (Tex. 1997),
the parties entered into a release agreement following months of dispute over a venture involving
an offshore diamond mining project. In the agreement, Schlumberger agreed to buy the Swansons'
interest in a joint venture for more than $800,000, while the Swansons agreed to relinquish all
rights in the venture and to release all causes of action against Schlumberger. Id. The Swansons
later filed suit against Schlumberger, contending that they agreed to Schlumberger's low-price
buyout only after being induced by misrepresentations about the value and feasibility of the
venture. Id. at 179. The supreme court found the release agreement dispositive of whether the
Swansons could prevail on a fraud claim because the agreement contained the following language:


[E]ach of us [the Swansons] expressly warrants and represents and does hereby
state . . . and represent . . . that no promise or agreement which is not herein
expressed has been made to him or her in executing this release, and that none of
us is relying upon any statement or representation of any agent of the parties being
released hereby. Each of us is relying on his or her own judgment and each of us
has been represented by Hubert Johnson as legal counsel in this matter. The
aforesaid legal counsel has read and explained to each of us the entire contents of
this Release in Full, as well as the legal consequences of this Release . . . .



Id. at 180 (emphasis added by supreme court). The court found that, by this language, the
Swansons had unequivocally disclaimed reliance on representations by Schlumberger about the
project's feasibility and value. Id. Consequently, the court concluded that the Swansons were
precluded as a matter of law from claiming that they were fraudulently induced to sell their interest
in the project. Id.

 In the present case, the no-reliance clause in the contract is not as emphatic as the
clause in Schlumberger, but it is nonetheless clear and straightforward in establishing that Starlight
agreed it was relying only on representations made in the contract itself in purchasing the Plaza. 
Therefore, since Baxter, Ablin, and HPM were not parties to the contract, there can be no liability
here based on any affirmative representations made by them. The narrower question, then, is
whether Baxter, Ablin, and HPM can be held liable based on their failure to disclose material
information.

 The Schlumberger court held that any alleged nondisclosures were merely the
converse of affirmative misrepresentations; namely, had all the true facts about the project been
disclosed, the truth would not have been affirmatively misrepresented. Id. at 182. Since we have
found that the no-reliance clause here precludes liability based upon any affirmative
misrepresentations, under Schlumberger we must also necessarily find that there is no liability
based upon Baxter's, Ablin's, and HPM's failure to disclose material information. 

 Starlight argues in response that Schlumberger is simply inapplicable to the claim
against Ablin because, unlike Schlumberger, this claim arose under a statute--Tex. Bus. & Com.
Code Ann. § 27.01(d)--that specifically creates liability for a person who has "actual awareness
of the falsity of a representation or promise made by another person and fails to disclose the falsity
of the representation or promise to the person defrauded, and benefits from the false representation
or promise." Tex. Bus. & Com. Code Ann. § 27.01(d) (West 1987 & Supp. 1999). Starlight's
argument is misplaced. First, Schlumberger also involved a statute--Tex. Bus. & Com. Code
Ann. § 27.01(a)--and the court specifically cited to this statute in support of its conclusion that
reliance is a necessary element of statutory fraud as well as common-law fraud. Schlumberger,
959 S.W.2d at 182. Second, although Starlight's claim against Ablin arises under section
27.01(d), which does not literally include reliance as a required element, reliance is implicitly
required to show that Defendants' false representations actually caused harm. See Prudential, 896
S.W.2d at 161-62 (holding that although reliance is not an element of a DTPA cause of action, a
contractual disavowal of reliance on alleged misrepresentations negates the actual causation
element of producing cause). Because reliance is required in claims for common-law fraud,
statutory fraud under section 27.01(a), and violations of the DTPA, it follows that reliance is also
required under section 27.01(d). As held in Schlumberger, we similarly hold here that the no-reliance clause precludes Starlight's statutory fraud claim against Ablin under section 27.01(d).

 We conclude that as a matter of law Baxter, Ablin, and HPM could not have been
found liable for common-law fraud, statutory fraud, or DTPA violations. The trial court's JNOV
as to Starlight's claims against these Defendants was therefore proper.

 In their third cross-issue, Defendants assert that the trial court correctly granted the
JNOV as to Ablin because he was only a limited partner, had no contact with Starlight before
closing, and had no knowledge about the roof or the HVAC system that Starlight did not also
have. In their fourth cross-issue, Defendants assert that the trial court abused its discretion in
admitting a tape recording of a telephone conversation between Baxter and Hardin because any
probative value of the evidence was substantially outweighed by the danger of unfair prejudice. 
Because we have already concluded that the trial court's JNOV as to Ablin was proper, we need
not address Defendants' third and fourth cross-issues.

 In their fifth cross-issue, Defendants assert that the trial court correctly granted
HPM's motion for JNOV because there was legally and factually insufficient evidence to support
the jury's answers to the liability and damages questions concerning HPM. Because we have
already concluded that the trial court's JNOV as to HPM was proper, we need not address
Defendants' fifth cross-issue.

 In their sixth cross-issue, Defendants assert that the evidence was factually
insufficient to support the jury's findings on cost of repairs because the amounts found were far
in excess of what was actually reasonable and necessary to repair any defects for which there could
be liability. Defendants assert that Starlight's roof-repair expert, David Lawrence, testified that
the roof repair could be accomplished for around $12,000. However, Lawrence also testified that
such a repair would not stop the roof from leaking.

 Defendants argue that Starlight's HVAC-repair expert, Thomas Alexander, testified
that the HVAC could be adequately repaired for $3,000 to $5,000. Defendants assert that the
HVAC repairs presented by Starlight would constitute a significant upgrade rather than a mere
repair of the existing system. Alexander testified he was brought in by Starlight's property
manager to make recommendations on dealing with the numerous temperature complaints within
the Plaza and to look into indoor air-quality problems. When asked if he thought $193,500 would
be the reasonable and necessary cost to make those repairs, Alexander responded "yes." The jury
awarded $103,500 for the HVAC. Defendants point to no evidence contradicting Alexander's
testimony. Considering all the evidence presented at trial, we conclude that the amount of
damages awarded by the jury is not so against the great weight and preponderance of the evidence
as to be clearly wrong or manifestly unjust.

 In their seventh cross-issue, Defendants assert that Starlight knew there were
material defects in the property before closing and, therefore, any representation Xarin made that
there were no material defects, or any failure to disclose the existence of material defects, could
not have been a producing or proximate cause of damages to Starlight. Defendants point to
evidence of a variety of problems of which Starlight was aware. It is true that one's knowledge
or investigation revealing a representation to be false may preclude claims of reliance or causation
of damages from the representation. See Chitsey v. National Lloyds Ins. Co., 698 S.W.2d 766,
769 (Tex. App.--Austin 1985), aff'd, 738 S.W.2d 641 (Tex. 1987). However, we reject the
argument that when a broad or multi-part representation is made, knowledge of the falsity of any
part of the representation necessarily precludes detrimental reliance on other parts of the
representation.

 Defendants point out that, before closing, Starlight had a copy of a report that
disclosed the existence of problems with the roof and the HVAC. However, Starlight's owner, 
Hardin, testified at trial that, while he knew there were some problems with the roof and HVAC,
he did not know the extent of the problems or that the problems constituted "material defects." 
We conclude that Hardin's knowledge of some problems with the roof and HVAC does not
preclude, as a matter of law, either reliance on or causation of damages by the no-material-defect
representation and failure to disclose by Defendants.

 In their eighth cross-issue, Defendants assert that the trial court erred in overruling
Xarin's objection to the form of the damages question dealing with HDR Engineering because the
question failed to segregate the amount of HDR's claim that was caused by Xarin from the amount
of the claim that was caused by Starlight. Defendants assert that a settlement agreement between
HDR and Starlight deals with disputed claims between HDR and Xarin as well as between HDR
and Starlight.

 HDR was a tenant at the Plaza under both Xarin and Starlight. Starlight claimed
that HDR's lease expired on August 31, 1994, but that HDR did not leave the space until October
15, 1994. Starlight and HDR disputed the amount due for the holdover period. In addition,
Starlight asserted claims against HDR for expense adjustments owed under the terms of its lease,
including amounts that accrued while Xarin owned the Plaza. HDR had claims against Starlight
for damages incurred while a tenant at the Plaza due to the lack of repair and maintenance to the
roof. The parties agreed that HDR would pay Starlight $15,000 in satisfaction of debts claimed
by Starlight and HDR would release Starlight for any claims by HDR.

 The jury was asked what sum of money would fairly and reasonably compensate
Starlight for the claim HDR made against it. The jury answered $47,262.83. Xarin asserts that
the amount of expense adjustments that occurred when Xarin owned the Plaza should have been
segregated out of the calculation. However, pursuant to the real estate lien note, Starlight owned
the right to all accounts receivable such as the expense adjustments that accrued while Xarin
owned the Plaza. We conclude that the court did not err in overruling Xarin's objection to the
form of this question. The amount of expense adjustment claims that occurred when Xarin owned
the Plaza did not need to be segregated out of the calculation.

 In their ninth cross-issue, Defendants assert that the trial court abused its discretion
in admitting evidence concerning asbestos because the evidence had no probative value and it was
inflammatory and highly prejudicial. See Tex. R. Evid. 403, 404(b). Although Starlight did not
seek damages from the alleged failure of Defendants to inform Starlight of the presence of asbestos
in the Plaza, the trial court stated that it was admitting evidence of asbestos because it was relevant
to questions of knowledge of material defects and of failing to disclose matters that should have
been disclosed. We conclude the trial court did not abuse its discretion in admitting the evidence
concerning asbestos.

 In their tenth cross-issue, Defendants assert that the evidence was legally and
factually insufficient to support the jury's answers to the questions pertaining to liability for
common-law fraud, statutory fraud, DTPA, breach of contract, breach of warranty and
unconscionability because Starlight failed to prove that Xarin, Baxter, or Ablin knew about any
material defects in the roof or HVAC. A business organization becomes aware of information
through the knowledge of its agents and officers. See Wellington Oil Co. v. Maffi, 150 S.W.2d
60, 63 (Tex. 1941); Hirsch v. Texas Lawyers' Ins. Exch., 808 S.W.2d 561, 563 (Tex. App.--El
Paso 1991, writ denied). There appears to be no dispute that in managing the Plaza for Xarin,
HPM was acting as Xarin's agent and that it was aware of the roof and HVAC problems. To the
degree that there is evidence that Baxter was aware of the problems as well, such knowledge may
be imputed to Xarin.

 Defendants do not argue that HPM had no knowledge of any material defects in the
roof or HVAC. Indeed, there was evidence that HPM received numerous complaints about both
items. Eddie Hayden of HPM testified that he had discussions with Baxter about the roof
problems and that he probably told Baxter about the complaints regarding the HVAC. Baxter
testified that, although he did not remember if he was told of the complaints about the HVAC,
Hayden may have told him. Baxter testified that he had been told of roof problems. Hayden
wrote letters to Baxter about the roof leaks. Ablin testified that he communicated with Baxter
frequently and that he had discussed the roof and HVAC to some degree with Baxter when
considering whether to sell the Plaza. Hayden testified that he told Baxter about the Health
Department's investigation of the air quality, in that the Department's air quality surveys were
being circulated among the tenants. Ablin testified that, before closing, he was aware of the
Department of Health investigation. We conclude that the record contains more than a scintilla
of evidence that Xarin, Baxter, and Ablin knew of material defects in the roof and HVAC.

 Defendants argue that all they knew about the roof leaks was that the roof would
leak, would be patched, would not leak for a while, but then later would begin to leak again. 
Defendants assert that the roof did not leak in the six months prior to closing. Defendants also
assert that the only air-quality problem in the building involved the presence of a smoking area on
the second floor of the building, which was closed after complaints. Having reviewed all the
evidence, however, we conclude that the evidence supporting the jury's findings is not so weak,
nor so against the great weight and preponderance of the evidence, as to be manifestly unjust.

 Defendants also assert that there is no evidence that they acted unconscionably in
their dealings with Starlight. (3) They argue that to demonstrate unconscionability, there must be
evidence that Defendants took advantage of Starlight's lack of knowledge or experience, and that
their behavior was glaringly flagrant. See Tex. Bus. & Com. Code Ann. § 17.45(5) (West 1987
& Supp. 1999); State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 451 (Tex. 1997). Defendants
point out that Starlight was a sophisticated party that knew about problems with the building. 
Even assuming Defendants did not act unconscionably here, however, the damages granted by the
jury for the DTPA claims are nonetheless supported by another jury finding: that Defendants
engaged in a false, misleading, or deceptive act or practice that was a producing cause of damages
to Starlight. See Tex. Bus. & Com. Code Ann. § 17.50(a) (West Supp. 1999) (listing four
alternative ways of demonstrating violation of DTPA).


CONCLUSION

 We affirm the portions of the trial court's judgment as follows: (1) denying Xarin
recovery on its counterclaim; (2) pertaining to Starlight's settlement agreement with HDR
Engineering; (3) denying Starlight recovery from Defendants Baxter, Ablin, and HPM for actual
damages; (4) denying Starlight recovery from Ablin for exemplary damages; and (5) denying
Starlight recovery from Baxter for DTPA violations.

 We reverse the portion of the judgment ordering that Starlight take nothing on its
claim against Xarin for damages to the roof and HVAC; we render judgment that Starlight recover
from Defendant Xarin $54,677.12 in actual damages to the roof and $103,500 in actual damages
to the HVAC as found by the jury, plus prejudgment interest on those amounts. We also render
judgment that Starlight recover from Xarin exemplary damages of $22,500 and additional damages
of $2,420 for its DTPA violations, each as found by the jury.

 We further render judgment that Starlight recover from Xarin its attorney's fees
consistent with these trial-court findings of fact: $160,294 for attorney's fees through trial,
$20,000 for this appeal, and $7,500 for making or responding to a petition for review by the Texas
Supreme Court and $3,000 if the petition is granted. The attorney's fees are contingent on
Starlight's success. We also render judgment that Starlight recover from Xarin the following
expert-witness fees as found by the trial court in its findings of fact: $8,644.57 for Thomas
Alexander and $1,358.75 for David Lawrence.

 We affirm the trial court's judgment in all other respects.



 

 J. Woodfin Jones, Justice

Before Chief Justice Aboussie, Justices Jones and Yeakel

Affirmed in Part; Reversed and Rendered in Part

Filed: January 14, 1999

Do Not Publish

1. See Tex. Bus. & Com. Code Ann. §§ 17.01-.63 (West 1987 & Supp. 1999).
2. Starlight also argued that Xarin waived any objection concerning the time at which damages
were measured in the jury questions because Xarin did not object to the question submitted and
tender a proposed instruction in substantially correct form. The test for determining whether a
party has preserved error in the jury charge is whether the party has made the trial court aware
of the complaint, timely and plainly, and obtained a ruling. See State Dep't of Highways & Pub.
Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992). Even assuming proper objection, however,
we have concluded that the court erred in granting the motion for JNOV.
3. Jury question twelve asked if any of the defendants (Baxter, Xarin, HPM, or Ablin) engaged
in "any unconscionable action or course of action that was a producing cause of damages to
Starlight, L.P." The jury answered "yes" as to each.


 building involved the presence of a smoking area on
the second floor of the building, which was closed after complaints. Having reviewed all the
evidence, however, we conclude that the evidence supporting the jury's findings is not so weak,
nor so against the great weight and preponderance of the evidence, as to be manifestly unjust.

 Defendants also assert that there is no evidence that they acted unconscionably in
their dealings with Starlight.