NO. 12-01-00261-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


RAY GOMEZ D/B/A

RAY'S AUTOMOTIVE,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 COUNTY COURT AT LAW NO. 2 OF


MATTIE L. MOORE,

APPELLEE
§
 SMITH COUNTY, TEXAS






MEMORANDUM OPINION


 This appeal arose out of alleged defective repairs to Appellee Mattie L. Moore's ("Mrs.
Moore") 1934 Chevrolet Coupe automobile (also referred to as a 1931 model) by Appellant Ray
Gomez d/b/a Ray's Automotive ("Gomez"). The trial court awarded Mrs. Moore actual damages
in the sum of $11,685, attorney's fees of $2,125, pre-judgment interest and costs. We modify the
damage recovery, and as modified, affirm the judgment.


Procedural Background


 On or about May 22, 1998, Mrs. Moore entered into an oral contract with Gomez in which
Gomez undertook to perform multiple repair services upon Mrs. Moore's 1934 Chevrolet Coupe
automobile. Mrs. Moore was displeased with the repairs performed by Gomez and filed suit in the
Smith County Justice of the Peace Court, Precinct 1. On December 15, 1999, judgment in the
amount of $2,339 was entered for Mrs. Moore. Gomez appealed to the County Court at Law, No.
2, of Smith County. In that court, Mrs. Moore alleged that Gomez failed to properly repair her
vehicle and that such failure violated the Texas Deceptive Trade Practices-Consumer Protection Act
("DTPA"). She further alleged that Gomez had breached an express or an implied warranty and
engaged in an unconscionable course of action by falsely representing that he would repair the
vehicle in a good and workmanlike manner. Following a bench trial, the trial court awarded Mrs.
Moore actual damages in the sum of $11,685, attorney's fees of $2,125, pre-judgment interest and
costs. At Gomez's request, the trial court filed findings of fact and conclusions of law. This appeal
followed.


The Evidence


 On appeal, Gomez raises twenty-six issues, substantially all of which challenge the legal
sufficiency of the evidence or assert that the respective findings of fact are contrary to the
overwhelming weight of the evidence. Twenty of these issues relate to Gomez's liability and the
remainder to Mrs. Moore's damages. 

 The record here consists of both parties' testimony and that of retired automobile mechanic,
J. R. Wilbanks ("Wilbanks"), who was called to testify by Mrs. Moore. Because Gomez undertook
to perform various repair services on Mrs. Moore's automobile, we review the evidence relating to
the work performed and to Mrs. Moore's specific complaints against Gomez.

Repairs Undertaken by Gomez 

 1. Repair of cracked head. Mrs. Moore first complained that the Chevrolet was
overheating. Gomez examined the car and advised Mrs. Moore that the engine head had been
cracked. He and Mrs. Moore agreed that he should proceed with the repairs of the cracked head.
Gomez subcontracted these repairs to East Texas Head Company. (1) After completion, no complaints
were made by Mrs. Moore about this work, and there was no dispute that the repairs were performed
satisfactorily. 

 2. Converting the electrical system from a 6-volt to a 12-volt system. Mrs. Moore next
complained that the lights of her Chevrolet were operating too dimly. Gomez then recommended
that the existing 6-volt electrical system be converted to a 12-volt system. He subcontracted these
modifications to Hawkins Alternator and Starter of Tyler. Hawkins installed a new alternator, a
voltage reducer and three new wires to convert the system into a 12-volt system. 

 Mrs. Moore points out that the Hawkins invoice was dated February 15, 1998, which date
preceded the first conversation Gomez and Mrs. Moore had about repair work on her car which
occurred in May 1998, thereby raising the question of whether these electrical repairs could have
been performed at all. Mrs. Moore, however, testified about her knowledge of the electrical repair
work, the presence of replacement electrical wiring and that the repairer had failed to install a
protective covering over the replacement wire. Mrs. Moore acknowledged, and the record is
undisputed, that notwithstanding the February 1998 date of the Hawkins invoice, the electrical work
converting the system to twelve volts was completed; it therefore appears that the date was
incorrectly entered on the invoice. 

 Mrs. Moore testified that soon after the car was delivered to her home by Gomez, a fire
occurred under the dashboard of the car. Neither she nor any other witness testified to the cause of
the fire. Wilbanks stated that although he did not examine the wiring after the reported fire, he had
not observed any defect in the condition of the wiring when the vehicle originally was brought in for
his inspection. 

 3. Radiator repairs. Because the car continued to overheat, Gomez subcontracted radiator
repairs to Tyler Radiator Shop, Inc. He testified that Tyler Radiator flushed and cored the radiator,
removed corrosion and welded the radiator. There were no complaints about this work nor is there
probative evidence that these repairs were defective.

 4. Replacement of the clutch. Gomez testified that before he pulled the motor out of the
car, he was unable to observe the condition of the clutch. Later, when he could view the clutch, he
determined that it and the pressure plate should be replaced, and the fly wheel resurfaced. This
repair work was performed, and there was no complaint about this work.

 5. Engine problems. The principal repair expense to Mrs. Moore's car was the work
performed on its engine. There are two aspects of the engine repairs. The first is the scope of the
engine work to be performed. Mrs. Moore testified that Gomez had agreed to "overhaul" her engine. 
Gomez, however, said that he agreed only to partially rebuild the engine. In consideration for
Gomez's work on the engine, Mrs. Moore was to pay Gomez $800, plus the cost of new parts for
the engine repairs. Gomez testified that it would have been considerably more expensive to
completely rebuild or overhaul the engine, which was the repair procedure Mrs. Moore claimed
Gomez agreed to perform. Hughes Automotive, in a written estimate, stated that its charge would
be $3,500 to $4,000 to perform the necessary work on the Moore engine. 

 The second aspect of the engine repairs is whether Gomez performed the repairs in a good
and workmanlike manner. There was no testimony as to the specific repairs performed by Gomez
on the engine. The engine had emitted a knocking sound when Gomez initially examined it. The
knock continued after Gomez returned the car to Mrs. Moore. Thereafter, Mr. Wilbanks ground
down the Babbitt rods several times and adjusted the shims, which reduced the knocking. However,
Wilbanks advised Mrs. Moore that the improvement was only temporary because of the deteriorated
condition of the rods. Soon after Wilbanks completed his repairs, Mrs. Moore testified that, while
she was driving the Chevrolet to Winona, the engine began to shake and make loud noises; she has
not been willing to drive the car after this occurrence.

Extended Delay in Completing the Repairs

 For an eleven-month period, Gomez retained possession of Mrs. Moore's automobile while
undertaking to make the various repairs to her car. Gomez's explanation for the extensive delay in
completing the repairs was that it was an old vehicle, that it did not have its original engine, and that
there was difficulty in identifying the parts needed, as well as locating and procuring the parts. 
Furthermore, it appears that the Chevrolet had not been in use for a period of time preceding
Gomez's repairs. The car was not registered, the state inspection stickers were out of date and the
engine was in a deteriorated condition according to Wilbanks. Gomez testified that he ordered
needed parts from sources in various parts of the country and as far away as New Jersey. Mrs.
Moore offered to help locate parts, but Gomez stated that he was not able to secure any needed
internal parts from suppliers Mrs. Moore suggested. Gomez testified to various other personal
interruptions. Mrs. Moore testified that she did not have need of the car for transportation; there
were no allegations or evidence of injury or damage to Mrs. Moore attributable to Gomez's lengthy
possession of the car. 


Standard of Review


 Findings of fact have the same force and dignity as a jury verdict. Anderson v. City of Seven
Points, 806 S.W.2d 791, 794 (Tex. 1991). Findings of fact are not conclusive, however, when a
complete statement of facts appears in the record. Seelbach v. Clubb, 7 S.W.3d 749, 754 (Tex.
App.--Texarkana 1999, pet. denied). Findings of fact are reviewable for legal and factual
sufficiency of the evidence by the same standards as govern review of jury findings. Id.

 An appellant attacking the legal sufficiency of the evidence to support an adverse finding on
an issue on which it did not have the burden of proof must demonstrate on appeal that no evidence
supports the adverse finding. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In
assessing the legal sufficiency of the evidence, we consider only the evidence and inferences tending
to support the finding and disregard all evidence and inferences to the contrary. See Wal-Mart
Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). We may sustain a "no evidence" point
only when the record discloses one of the following: (1) there is a complete absence of evidence of
a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only
evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than
a mere scintilla of evidence, or (4) the evidence establishes conclusively the opposite of a vital fact. 
See Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). It is not
within our power to second guess the fact-finder unless only one inference can be drawn from the
evidence. See Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 461 (Tex. 1992). If there is more
than a scintilla of evidence to support the finding, the evidence is legally sufficient. See Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993). More than a scintilla of evidence exists
if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about
a vital fact's existence. Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002). When evaluating a factual sufficiency point challenging findings claimed to be contrary to
the overwhelming weight of the evidence, we consider and weigh all of the evidence in the case, both
evidence supporting the court's findings of fact and evidence which tends to contradict the findings
upon which the judgment was entered. See In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). 
We may not substitute our conclusions for those found by the trier of fact and will reverse only if we
conclude that the verdict is so against the great weight and preponderance of the evidence as to be
manifestly unjust. Id. 

 We review the trial court's conclusions of law de novo. Stolz v. Honeycutt, 42 S.W.3d 305,
310 (Tex. App.--Houston [14th Dist.] 2001, no pet.). Further, we follow a trial court's conclusion
of law unless it is erroneous as a matter of law. Id.


Waiver of Statutory Notices


 First, we consider the threshold question raised in Gomez's twenty-fourth issue that the trial
court erred in failing to enter a take nothing judgment in his favor on the DTPA claims because Mrs.
Moore did not give the statutory notice to him required by Section 17.505 of the DTPA or the
statutory notice of a claimed breach of an implied warranty. Mrs. Moore did fail to give the requisite
statutory notice before filing the DTPA action. However, such failure is not fatal to Mrs. Moore's
cause of action. See Pool Co. v. Salt Grass Exploration, Inc., 681 S.W.2d 216, 219 (Tex. App-Houston [1st Dist.] 1984, no writ). The statutory notice can be waived, and the trial court here found
waiver. Brown Found. Repair and Consulting, Inc. v. McGuire, 711 S.W.2d 349, 353 (Tex. App.-Dallas 1986, writ ref'd n.r.e.). Gomez did not file a plea in abatement, he did not object to testimony
pertaining to Mrs. Moore's cause of action under the DTPA, he filed no trial court motions
expressing disagreement with the pleadings or the testimony, nor did he file a special exception to
Mrs. Moore's pleadings because of that omission. Id. at 219. Rule 90 of the Texas Rules of Civil
Procedure provides that any defect, omission or fault in a pleading, either of form or substance,
which is not pointed out by exception, in writing, and brought to the attention of the trial court, shall
be deemed waived by the party seeking reversal. Tex. R. Civ. P. 90. Waiver applies also to the
failure to object to the absence of the statutory notice of a breach of an implied warranty under the
DTPA. Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 351-352 (Tex. 1987). We hold that
Gomez waived his objection to Mrs. Moore's failure to give the respective statutory notices of his
DTPA claim. Gomez's twenty-fourth issue is overruled. 


Liability Issues


 Mrs. Moore recovered under two independent theories of liability: (1) violations of Sections
17.46 and 17.50 of the DTPA and (2) common law negligence in the performance of the repair work
on the vehicle.

The DTPA

 We first note that Mrs. Moore satisfied the definition of consumer as prescribed in Tex.Bus.
& Com. Code Ann. § 17.45(4) (Vernon 1987 & Supp.1999) in order to maintain a private cause of
action under section 17.50 of the DTPA. Melody Home Mfg. Co., 741 S.W.2d at 351-352. The trial
court's finding that she was a consumer under the DTPA is not challenged here.

 A. False Representations. 

 In his fifth issue, Gomez asserts that there is no evidence to support the trial court's finding
of fact that he falsely represented to Mrs. Moore that he had repaired her vehicle in a good and
workmanlike manner. In his sixth issue, he contends that such finding of false representation was
contrary to the overwhelming weight of the evidence. Gomez's nineteenth issue urges that there is
no evidence that Mrs. Moore relied upon any false representation by Gomez; in his twentieth issue
Gomez asserts that any finding of reliance by Mrs. Moore on Gomez's false representations is
contrary to the overwhelming weight of the credible evidence. These issues relate to the laundry list
of false representations actionable under section 17.50(a)(1) of the DTPA, specifically paragraph
(22) of section 17.46(b). Tex. Bus. & Com. Code Ann. § 17.46(b)(22)(Vernon 2002)(formerly
subsection 21). (2)

 The evidence is conflicting regarding whether Gomez made representations to Mrs. Moore
that he had repaired her vehicle in a good and workmanlike manner. The automobile was delivered
back to Mrs. Moore by Gomez only after a heated disagreement in which Mrs. Moore demanded that
the car be returned immediately. Mrs. Moore testified that Gomez had told her that he had not
completed his repairs when the car was returned. The car was not driven back to Mrs. Moore but
delivered to her house on Gomez's trailer. Mrs. Moore said the car could not be operated after it was
returned, and Mrs. Moore arranged to have the car towed to Wilbanks' garage. 

 Gomez himself, however, testified that he had completed the repairs upon Mrs. Moore's
vehicle when it was returned to her. He said the car was in perfect condition when she got the car
back. He later said that it was "completely fixed" for what he was paid to do. We hold that Gomez's
statements were sufficient probative evidence to support the trial court's finding that Gomez falsely
represented that he had repaired Mrs. Moore's automobile in a good and workmanlike manner. 
Gomez's fifth, sixth, nineteenth and twentieth issues are overruled. B. Breach of Implied Warranty. 

 The second theory of DTPA recovery by Mrs. Moore was that the trial court found that
Gomez breached his implied warranty of good and workmanlike performance of the repairs and
engaged in an unconscionable course of action. The warranty here arises with respect to contracts
for repair services for tangible goods or property. Melody Home Mfg. Co., 741 S.W.2d at 356. The
supreme court has held that a cause of action for an implied warranty breach is available to such
consumers under the DTPA. Id. at 354. In his fifteenth and sixteenth issues, Gomez asserts that
there was no evidence to support the finding that he breached an implied warranty to Mrs. Moore
and that the finding was contrary to the overwhelming weight of the evidence. 

 The inquiry here does not pertain to a misrepresentation by the repairer but rather to his
performance. Id. at 355. The supreme court has defined good and workmanlike as "that quality of
work performed by one who has the knowledge, training, or experience necessary for the successful
practice of a trade or occupation and performed in a manner generally considered proficient by those
capable of judging such work." Id. at 354.

 1. Engine repairs. 

 As stated, no evidence was offered as to the specific engine repairs performed on the Moore
vehicle. Gomez did not overhaul or rebuild the car's engine which Mrs. Moore testified had been
their agreement. Furthermore, we conclude that the engine repairs that were undertaken were not
"performed in a manner generally considered proficient by those capable of judging such work." See
id. After the car was returned to Mrs. Moore, the engine performed very poorly, and the engine
disintegrated shortly after the car was driven but a short distance. The breakdown of the engine soon
after Gomez had the vehicle in his possession and had completed his work upon the engine supports
the trial court's finding that he breached his implied warranty of good and workmanlike repairs. We
hold that this engine breakdown was circumstantial evidence that Gomez's performance of the
engine repairs was defective. 

 2. Electrical repairs. 

 Likewise, no evidence was offered by the parties themselves as to a description of the
electrical repairs performed. Wilbanks' work on the Chevrolet was primarily an effort to reduce the
knocking in the engine so that the car could be driven at least in a limited manner. However, he
testified that he did not inspect the electrical wiring system although he did repair the right front
headlight and the right rear taillight. He said he did not see anything improper in the wiring but he
qualified that statement by saying that he "[d]idn't look, didn't even look." The trial court found that
Gomez failed to properly repair the vehicle. Chronologically, the electrical fire closely followed the
conversion of the electrical wiring system to a 12-volt system. An electrical fire that sequentially
occurs soon after electrical repair work has been performed on that part of the vehicle is supportive
of the finding of a deficient performance of the electrical repairs. We conclude that the chronology
of these events is circumstantial evidence that the electrical repairs were not performed in a good and
workmanlike manner and supports the court's finding of Gomez's breach of the implied warranty
of proper performance of the repairs to the electrical system. We overrule issues fifteen and sixteen.

 3. Representations made knowingly. 

 In his seventeenth and eighteenth issues, Gomez contends that there is no evidence to support
the trial court's finding that Gomez knowingly made false representations to Mrs. Moore and,
alternatively, that such finding is contrary to the overwhelming weight of the evidence. The repairs
to the engine and to the electrical system were the responsibility of Gomez. During the course of
his repair efforts, Gomez was in possession and control of Mrs. Moore's car. He was trained,
experienced, had a college degree in automobile repair and had owned and operated his repair facility
for five years. He knew the condition of the engine and the electrical system. We hold that there
is probative evidence supporting the trial court's finding that Gomez's false representations were
made knowingly. Issues seventeen and eighteen are overruled.

Common Law Negligence

 By his thirteenth and fourteenth issues, Gomez contends that there is no evidence that he
negligently failed to repair Mrs. Moore's car and, alternatively, that such an affirmative finding is
against the overwhelming weight of the evidence. In issues twenty-one and twenty-two, Gomez
asserts that there is no evidence that he was negligent in failing to properly repair the vehicle, or
alternatively that the affirmative finding of negligence in his failing to properly repair is against the
overwhelming weight of the evidence. These issues relate to a common contention that Gomez
negligently failed to properly repair the Moore vehicle; no specific acts of negligence or even the
specific repair work complained about are recited. 

 The only engine expenses Mrs. Moore incurred after the vehicle was returned were
Wilbanks' charges that Mrs. Moore paid for work which temporarily reduced the knocking in the
engine. The sparse evidence shows that the deteriorated condition of the engine was not the result
of Gomez's repairs but was the consequence of the age and nonuse of the vehicle. Wilbanks testified
that his repairs to the engine "would not last" because of the motor's worn condition. There is no
evidence that Gomez's repairs proximately caused the worn engine condition. On the contrary, Mrs.
Moore testified that the overhaul or engine rebuild agreement occurred before any work was
undertaken on the engine. Her witness, Wilbanks, testified that he did not observe that Gomez had
made improper repairs to the engine. We conclude that the need for an engine overhaul or rebuild
was not proximately caused by Gomez's negligent repairs but resulted from the pre-existing
condition of the engine. 

 The only Gomez repairs that demonstrably were a proximate cause of damage to Mrs.
Moore's automobile were those related to the electrical wiring conversion shortly after which an
electrical fire occurred which necessitated repair. As stated, the chronological sequence of the
repairs to the electrical wiring followed directly by a fire in that wiring is circumstantial evidence
that the electrical work was negligently performed. Gomez's thirteenth, fourteenth, twenty-first and
twenty-second issues are overruled.

Other Liability Issues 

 Issues one and two relate to Gomez's alleged false representations that certain repairs to Mrs.
Moore's automobile were necessary. The record is replete with evidence that various repairs were
necessary for the proper operation of this older vehicle. Gomez's issues one and two are overruled. 
Issues three and four pertain to Gomez's alleged false representations that he had expertise in the
repair of vintage automobiles. This is not a finding upon which liability is grounded, and issues
three and four are overruled. Gomez's eleventh issue asserts that the trial court erred in overruling
his Motion for New Trial and Objections to Judgment. This issue is cumulative of other issues; the
eleventh issue is likewise overruled. In his twenty-fifth issue, Gomez charges that the trial court
erred in finding that Mrs. Moore's evidence was sufficient to prove her cause of action by a
preponderance of the evidence because the finding is too global and not supported by the evidence. 
This issue is cumulative of other issues and is overruled.


Damages
 

 In his seventh, eight, and twelfth issues, Gomez complains that the trial court's conclusion
of law that Mrs. Moore is entitled to damages in the sum of $7,185 is without support in the evidence
and, alternatively, is contrary to the overwhelming weight of the evidence. He further complains that
the sum awarded results from the application of an improper measure of damages and that awarding
treble damages is error. The trial court made findings of fact that Mrs. Moore incurred economic
damages under the DTPA in the sum of $2,395 which it trebled after finding that Gomez's false
representations were made knowingly, for a total of $7,185. The court also found that the reasonable
cost to repair the damage to the vehicle which was proximately caused by Gomez's negligence was
$4,500.

 It appears that the economic damages of $2,395 were computed by reducing the $2,800 in
Gomez invoices by approximately $409, the amount of Mrs. Moore's final payment which was never
remitted to Gomez. The economic damages sustained were the $800 (3) paid to Gomez by Mrs. Moore
for engine repairs and the $391 for the electrical conversion, totaling $1,191. Because of the
knowing false representations and breach of the implied warranty, the economic damages are trebled,
totaling $3,573. We therefore reduce Mrs. Moore's economic damages to $3,573, and except as
modified, overrule the seventh, eighth and twelfth issues.

 By issues nine and twenty-six Gomez challenges the trial court's conclusion of law that Mrs.
Moore was entitled to recover damages of $4,500 as a result of Gomez's negligence. As to the
reasonable cost to repair the damage to Mrs. Moore's vehicle proximately caused by Gomez's
negligence, the trial court found damages in the amount of $4,500. That sum includes the $577.41
paid by Mrs. Moore to Livingston Auto Body to repair damage to the automobile after the electrical
fire. When the car was returned by Gomez, Mrs. Moore testified that the hood ornament valued at
$125 was broken and two hood latches costing a total of $32.31 were missing, which totaled $157.31
in replacement parts. Also, after the car was returned by Gomez, Mrs. Moore paid Wilbanks $225
to attempt to make the engine run and perform various other miscellaneous repairs to the vehicle. 
We sustain the award of all of these charges, which total $959.72. We reduce the court's findings
as to damages to Mrs. Moore's car proximately caused by Gomez's negligence to $959.72, and
except as modified, overrule issues nine and twenty-six.

Failure to Mitigate Damages 
 In his twenty-third issue, Gomez asserts that Mrs. Moore failed to mitigate her damages. A
plaintiff in a DTPA case has the same duty to mitigate damages as do other claimants. Gunn
Infiniti, Inc. v. O'Byrne, 996 S.W.2d 354 (Tex. 1999). A party seeking recovery under the DTPA
must use ordinary care to mitigate her damages. Texas & P. Ry. Co. v. Mercer, 127 Tex. 220, 90
S.W.2d 557, 560 (1936); see also Fidelity and Deposit Co. of Maryland v. Stool, 607 S.W.2d 17,
25 (Tex.Civ.App.-Tyler 1980, no writ). Neither in the trial court nor here, however, has Gomez
asserted which of Mrs. Moore's damages might have been reduced had she undertaken to mitigate
her damages. The electrical fire damage was not subject to mitigation as it was repaired after it
occurred. As to the engine damage, Mrs. Moore testified that she did not have need for the car for
the purpose of transportation and has not sought to recover here for the loss of its use. None of Mrs.
Moore's damages were proper for mitigation. Gomez's twenty-third issue is overruled.

Other Elements of Damages 
 In his tenth issue, Gomez asserts that the trial court erred in awarding attorney's fees,
prejudgment and post-judgment interest and costs to Mrs. Moore. Section 17.50(d) of the DTPA
provides that a prevailing consumer shall be awarded reasonable and necessary attorney's fees and
court costs. Tex. Bus. & Com. Code Ann. § 17.50(d)(Vernon 1987). As to attorney's fees, Mrs.
Moore's counsel, Jack Norwood, offered an itemization of his time and charges expended in
preparing and trying this case and asserted that his charges were reasonable and customary. This
evidence was admitted in evidence without objection and no contradictory proof was offered. The
challenge to Mrs. Moore's attorney's fees is denied.

 Likewise, Gomez's objection to the trial court's granting of court costs and post-judgment
interest to Mrs. Moore cannot be sustained. As stated, Section 17.50(d) authorizes the recovery of
court costs by the prevailing consumer. As to post-judgment interest, the trial court judgment recited
that Mrs. Moore recover post-judgment interest at the rate of ten percent from the date of the
judgment until paid. Post-judgment interest is mandated by statute. Tex. Fin. Code Ann. § 304.003
(Vernon 1998). The challenge to these elements of damage is also denied.

 Furthermore, the trial court concluded that Mrs. Moore should recover ten percent
prejudgment interest. Prejudgment interest is compensation allowed for lost use of money during
the lapse of time between the accrual of the claim and the date of judgment. Cavnar v. Quality
Control Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985). A judgment in a property damage case
must include prejudgment interest. Tex. Fin. Code Ann. § 304.102 (Vernon 1998). Here, Mrs.
Moore specifically prayed for prejudgment interest as damages. A prevailing party, however, is not
entitled to recover prejudgment interest on damages until those damages have actually been
sustained. Calhoun v. Chase Manhattan Bank (U.S.A.), N.A., 911 S.W.2d 403, 411 (Tex.App.-San
Antonio 1995, no writ). The $800 Mrs. Moore paid Gomez to repair the engine of her car resulted
in recoverable damages on or about April 4, 1999, the date the Chevrolet was returned to Mrs. Moore
at which time the engine was not working properly, was difficult to crank, and "would just backfire
and pop." She testified that "she couldn't use it." The $391 for electrical work performed by
Hawkins was invoiced on February 15, 1998. The repairs arising from the electrical fire resulting
in $577.41 damages in addition to the expense of the replacement of the broken hood ornament and
the hood latches of $157.31 were completed on October 21, 1999. (4) These damages were subject to 
prejudgment interest. Prejudgment interest accrues on the date suit was filed if no written notice of
the claim is received by the defendant and ends on the day preceding the date of the judgment. Tex.
Fin. Code Ann. § 304.104 (Vernon 1998). Suit was filed on July 16, 1999 and the day preceding
the rendition of the judgment was August 1, 2001. Prejudgment interest computed as simple interest
is payable at the rate of ten per cent per annum. Gomez's tenth issue is overruled. 


Conclusion


 We affirm the judgment of the trial court in favor of Mattie L. Moore against Ray Gomez
d/b/a Ray's Automotive. We modify the judgment to award Mrs. Moore $4,532.72 in damages, 
$2,125 in attorney's fees, prejudgment interest of ten percent per annum from July 16, 1999 until
August 1, 2001, ten percent per annum post-judgment interest from August 2, 2001 and costs. In
all other respects, we affirm the judgment of the trial court. 


 TOM B. RAMEY, JR. 

 Retired Chief Justice



Opinion delivered June 11, 2003.

Panel consisted of Worthen, C.J., Griffith, J. and Ramey, Jr., Retired Chief Justice, Twelfth Court of Appeals, Tyler,
sitting by assignment.


















(PUBLISH)







1. The record shows that certain specialized repairs were referred to independent contractors whose charges
were paid by Gomez, and Gomez received an additional percentage of those charges which was added to the invoice
to be paid by the owner. 
2. Section 17.50(a) provides that a consumer may maintain an action where any of certain specified acts
constitutes a producing cause of economic damages or damages for mental anguish. Among the specified acts is the
use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated
in a subdivision of Section 17.46(b) and relied on by a consumer to the consumer's detriment. Section 17.46(b)(22)
identifies "representing that work or services have been performed on, or parts replaced in, goods when the work or
services were not performed or the parts replaced" as a false, misleading, or deceptive act or practice.
3. The record shows that Gomez originally charged Mrs. Moore $800 plus the cost of the parts to be used to
perform his work on the engine. The evidence reflects that the $409 invoiced to Mrs. Moore but never paid by her
was to cover the cost of parts. Thus, the consideration paid to Gomez for the engine work was the original invoice
charge of $800 only. 
4. The other negligence expenses including the Wilbanks invoice and the cost of the damaged and missing
parts were incurred prior to October 21, 1999.